**In re Marcie BAKER, Debtor.**

**Allen Co. Child Support Enforcement Agency and Cory Ray Curl Plaintiffs,**

**v.**

**Marcie Baker Defendant.**

**Nos. 02–3086, 02–30742.**

United States Bankruptcy Court, N.D. Ohio.

Dec. 17, 2002.

F. Stephen Chamberlain, Lima, OH, for plaintiff.

Gregory W. Donohue, Lima, OH, for defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Plaintiffs' Motion for Summary Judgment, Memorandum in Support, and the Defendant's Memorandum in Opposition. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiffs' Motion for Summary Judgment should be Granted.

### FACTS

The facts in this case are undisputed. On October 28, 1996, the Plaintiff, Cory Ray Curl, (hereinafter the "Plaintiff") was adjudged to be the father of Casey Curl, a minor child, who was born on April 8, 1995. At this same time, the minor child's mother, Marcie P. Baker, the Defendant/Debtor in this action (hereinafter "Debtor"), was named as the custodial parent. Later, on September 26, 1997, the Plaintiff, in accordance with his status as the father of Casey Curl, was ordered to pay child support to the Debtor in the sum of Three Hundred Four dollars ($304.00) per month. This obligation was then subject to a wage withholding order which was processed by the other Plaintiff in this action, the Allen County Child Support Enforcement Agency.

Three years later, on June 21, 2000, the Plaintiff filed a Motion for Joint Custody. A hearing was then held on August 2, 2000, at which time the Parties agreed to a Shared Parenting Plan. The terms of this Plan, which were memorialized in an order issued by the Juvenile Court on September 15, 2000, made the Plaintiff the residential parent of the Parties' minor child. Of equal importance, the Debtor, due to this change in circumstances, was ordered to pay to the Plaintiff child support and, conversely, the Plaintiff's child support obligation to the Debtor was ordered retroactively terminated from May 1, 1999. However, despite the termination of the Plaintiff's child support obligation, the facts of this case show that, due to an administrative delay, the Plaintiff continued to have his wages garnished pursuant to the initial support order. As a result, the

Debtor continued to receive child support payments to which she was not otherwise entitled. In a similar manner, the Debtor also failed to make any remuneration to the Plaintiff on account of the retroactive termination of the Plaintiff's child support obligation.

On February 11, 2002, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. Contained in the Debtor's petition were the overpayments the Debtor received for child support. Thereafter, on March 25, 2002, the Plaintiffs commenced the instant action seeking a determination that this obligation is a nondischargeable debt pursuant to the exception to discharge set forth in 11 U.S.C. § 523(a)(5).

### LAW

**11 U.S.C. § 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 3128(b) of this title does not discharge an individual debtor from any debt–

(5) to a spouse, former spouse, or child of the debtor, for alimony. to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

### DISCUSSION

The sole issue raised in this case is whether an overpayment of child support is included within the exception to discharge set forth in 11 U.S.C. § 523(a)(5). As this determination concerns the dischargeability of a particular debt, this matter is a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(2)(I); 28 U.S.C. § 1334.

Section 523(a)(5) of the Bankruptcy Code excepts from discharge any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child . . . ." This section "represents Congress' resolution of the conflict between the discharge of obligations allowed by the bankruptcy laws and the need to ensure the necessary financial support for the divorced spouse and children of the debtor." *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1106 (6th Cir.1983). Whether an obligation falls within the parameters of § 523(a)(5) is a matter of federal law, although state law should be consulted for guidance. *Id.* at 1107–08.

Under federal law, the party moving for a finding of dischargeability bears the burden to establish the applicability of § 523(a)(5) by a preponderance of the evidence. *Meyers v. Internal Revenue Service (In re Meyers)*, 196 F.3d 622, 624 (6th Cir.1999). As it applies to this evidentiary standard, it is the Plaintiff's contention that, despite the retroactive termination of his child support obligation, any monies owed to him as a result of the overpayments made by the Debtor still retain their character as a child support obligation. The Debtor, however, disagrees, arguing that an overpayment on a child support debt is simply a garden variety unsecured debt, and is therefore dischargeable.

In support of the position that an overpayment of child support is excepted

from discharge, the Plaintiff cites to the case of *In re Calhoun* wherein a four-part test was applied by the Sixth Circuit Court of Appeals to determine whether an obligation is included within the scope of § 523(a)(5).[1] This Court, however, after careful review, has strong reservations about applying the test developed in *In re Calhoun* to the particular facts of this case. This is because in *In re Calhoun* the Court was only addressing the "actually in nature of . . . support" language of subparagraph (B) of § 523(a)(5) which is meant to ensure that an obligation labeled as support is not actually a property settlement or other equitable division of marital property in disguise. *Id.* at 1107.[2] As explained by the Court in *In re Calhoun:*

> Support in this broad sense results even if the assumption of joint marital debts is actually a division of property. It is clear from the statute and legislative history that Congress could not have intended that all assumptions of . . . debts would be nondischargeable. Such assumptions of debt are discharged to the extent that payment is not actually in the nature of alimony, maintenance or support. To interpret § 523 in this broad sense envisages results at odds with the fresh start concept which underlies the Bankruptcy Act.

*Id.* at 1108–09 (internal citations and punctuation omitted).

However, in the context of a support obligation versus a division of property, children, although they have a right to be supported by their parents, generally do not have an interest in their parents' property. *See* O.R.C. § 3103.03 (stating that parents have a duty to support their minor children); O.R.C. § 2919.21 (providing a criminal penalty for people who abandon or fail to support their minor children). As a consequence, an obligation labeled as child support would rarely, if ever, be a division of property between a parent and a child. Accordingly, as no assertion of a division of property has been made in this case, resolution of the issue presented will be determined not by the direct application of the *In re Calhoun* test, but instead will be determined according to normal principles of statutory interpretation.

■ In any exercise of statutory interpretation, a court must begin by examining the language of the statute itself. *See, e.g., Estate of Lucas v. United States,* 97 F.3d 1401 (11th Cir.1996), *cert. denied,* 520 U.S. 1186, 117 S.Ct. 1468, 137 L.Ed.2d 681 (1997). In looking at § 523(a)(5), it is apparent that the issue presented in this case—i.e., whether an overpayment of child support constitutes a support obligation—centers around interpreting the phrase "for . . . support of such . . . child" as set forth in § 523(a)(5). When considering this issue, as it relates to the particular facts in this case, two interpretations

---

1. The four requirements of this test are: (1) the intent of the state court or the parties was to create a support obligation; (2) the support provision has the actual effect of providing necessary support; (3) the amount of the support provision is not so excessive as to be unreasonable under traditional concepts of support; and (4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law. *See Luman v. Luman (In re Luman),* 238 B.R. 697, 705 (Bankr. N.D.Ohio 1999).

2. *See also Carter v. Carter (In re Carter),* 138 B.R. 356, 359 (Bankr.D.Conn.1992) ("an obligation is in the nature of alimony when it is intended for the support of the debtor/spouse as opposed to a mere division of the marital property."); *Goin v. Rives (In re Goin),* 58 B.R. 136, 137 (D.Kan.1985) (whether an obligation is actually in the nature of support, as opposed to a property settlement, must be determined by looking at all facts and circumstances).

seem equally plausible. The first construction, and the one which the Plaintiffs would have this Court adopt, holds that for purposes of § 523(a)(5) a debt is "for ... support of such ... child" whenever there is a legal duty to pay such an obligation. The second view, and a more restrictive approach which aligns itself with the Debtor's position, would only find the "for ... support of such ... child" language of § 523(a)(5) satisfied when the obligation is, in fact, paid for the direct support of the child.

■ In situations such as this where a statute is capable of two reasonable interpretations, a court is directed to look beyond the statutory language and determine which interpretation most closely conforms with the intent of the statute. *Director, OWCP v. Detroit Harbor Terminals, Inc.*, 850 F.2d 283, 289 (6th Cir.1988). In doing so, any underlying policy considerations of the statute should be taken into account. *United States v. LaHue*, 170 F.3d 1026, 1030 (10th Cir.1999). As it pertains to these statutory principles, two reported decisions have addressed the issue as to whether an overpayment of child support falls within the scope of § 523(a)(5), with both decisions adopting a more restrictive approach in determining whether an overpayment of child support was entitled to favorable treatment.

First, in *In re Lutzke*, 223 B.R. 552 (Bankr.D.Or.1998), at issue was whether a parent-creditor's overpayment of child support was entitled to priority under § 507(a)(7), the section of which contains,

for purposes of this case, language identical to § 523(a)(5).[3] In holding that the claim was not entitled to priority, the Court looked primarily to the lack of need of the parent-creditor. In doing so, the court specifically noted that no minor children were living with the creditor when the overpayments were made. *Id.* at 554. In addition, the court in *In re Lutzke* pointed out that under applicable state law, a claim for an overpayment of child support is not actually considered child support. *Id.* at 555.

The *In re Lutzke* decision was later cited with approval in *Lankford v. Drinkard (In re Drinkard)*, where the court found that an agreed judgment entry made for the overpayment of child support was not entitled to the benefits of § 523(a)(5). 245 B.R. 91 (Bankr.N.D.Tex.2000). In coming to this decision, the court in *In re Drinkard*, like the court in *In re Lutzke*, found that a judgment entry for the overpayment of child support would not, within the meaning of applicable state law, constitute a debt for child support. *In re Drinkard*, 245 B.R. at 93. Similarly, and also analogous to the *In re Lutzke* decision, the court in *In re Drinkard* found that the creditor-parent, who was not the residential parent, did not actually have a "need" for the child support, nor was there a disparity in the parties' income. *In re Drinkard*, 245 B.R. at 94. Finally, the court in *In re Drinkard* specifically noted that the debt in controversy arose from a money judgment—as opposed to an order for support—thereby changing the charac-

---

**3.** Section 507(a)(7) provides: (a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record,

determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt–

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

ter of the award. *Id.* However, for a number of reasons, the Court does not find the arguments made in either of the above decisions particularly persuasive in determining the result of this case.

To begin with, the particular attention the above decisions pay to the "need" of the parent-creditor does not find support in the statute. In this regard, it is noted that had Congress wanted a court to take into account factors such as "need" and/or a disparity in the parties' income, it certainly knew how to make its wishes known considering that under § 523(a)(15), which excepts from discharges those marital debts not included within § 523(a)(5), such considerations are explicitly set forth.[4] In addition, even if the "need" of the creditor-parent were a factor, the Plaintiff in this case apparently has such a "need" given that he, unlike the situation in both *In re Lutzke* and *In re Drinkard,* is the residential parent of the Parties' minor child.

Second, the view, as espoused in *In re Drinkard,* that a subsequent money judgment negates the applicability of § 523(a)(5) is not in conformance with the express language of the statute. In particular, § 523(a)(5) explicitly provides that for an obligation to be nondischargeable it does not have to arise from a court order, but only "in connection with" an "order of a court of record[.]" This position is also consistent with a prior ruling made by this Court in *Dockery v. Andrist (In Re Andrist)* where it was held that the nature of a support obligation does not change merely because a plaintiff is compelled to seek a money judgment for such obligation. 3 O.O.3d 477, 478 (N.D.Oh.1976).

Finally, unlike the *In re Lutzke* and *In re Drinkard* decisions, the instant case can be distinguished on the grounds that applicable state law provides that an overpayment of child support still retains its character as a support obligation. In particular, Ohio law provides that an "Income withholding order" is defined as "an order or other legal process directed to an obligor's payor to withhold *support* from the income of the obligor." O.R.C. § 3115.01(F) (emphasis added). Additionally, it is interesting to note that Ohio case law provides that "the duty of support runs from parent to child, and not directly from noncustodial parent to custodial parent." *Miller v. Miller,* 73 Ohio App.3d 721, 724, 598 N.E.2d 167, 169 (1991). Thus, it would seem to follow that a parent who wrongly appropriates money earmarked for a child's support would be liable for conversion, which in turn, raises the possibility that the exception to discharge set forth in § 523(a)(6), which deals with a willful and malicious injury, is applicable in this case.

In addition to not finding the arguments made in the *In re Drinkard* and *In re Lutzke* decisions persuasive, policy considerations also seem to clearly support adopting an interpretation of § 523(a)(5) which is broad in scope. Of particular importance in this regard is the fact that, unlike most exceptions to discharge which are narrowly construed, case law has clearly established that § 523(a)(5) is to be given a very broad construction so as to further the bankruptcy policy of favoring support obligations over a debtor's need for a fresh start. *Williams v. Kemp (In re Kemp),* 242 B.R. 178, 181 (8th Cir.

---

**4.** Section 523(a)(15) provides that debts incurred in a divorce proceeding are generally nondischargeable in bankruptcy, unless at least one of two exceptions apply: (1) the debtor does not have the ability to repay the debt; or (2) the benefit of discharge to the debtor would outweigh the detrimental consequences to the spouse, former spouse, or child of the debtor.

BAP 1999), aff'd, 232 F.3d 652 (8th Cir. 2000). In this same vein, one of the consistent underlying themes of the Bankruptcy Code holds that familial obligations are, whenever possible, to be accorded a great amount deference. *In re Yee*, 7 B.R. 747, 755 (Bankr.E.D.N.Y.1980) (familial obligations have always enjoyed a special position under the bankruptcy laws). For example, the exception to discharge set forth in § 523(a)(5) has been around in one form or another since 1903 when Congress enacted § 17a(7)[5] to the Bankruptcy Act. Also, in addition to § 523(a)(5), many provisions of the Bankruptcy Code accord a special status for familial obligations, including, (1) § 302, which limits joint filings to only a husband and wife, (2) § 507(a)(7), which affords priority to support obligations, (3) § 1328(a)(2), which excepts those debts under § 523(a)(5) from discharge in a Chapter 13, and (4) § 1325(b)(2)(A), which provides that obligations for maintenance and support are nondisposable income for purposes of determining the debtor's ability to pay in a Chapter 13 plan of reorganization.

■ Of equal importance, basic principles of federalism hold that in matters which are traditionally reserved to the states—for example, domestic relations— any doubt as to a statute's interpretation should be resolved in favor of not interfering in the state court matter. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (State family law will be overridden by conflicting federal law only when Congress has positively required such a result by direct enactment, and when state law does major damage to a clear and substantial federal interest.); *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 507, 15

L.Ed.2d 404 (1966) (same); *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States.").

■ Thus, for the above reasons, the intent of § 523(a)(5) clearly aligns itself much more closely with the position that, as the phrase is used in § 523(a)(5), an obligation is "for ... support of such ... child" whenever there is any legal duty to pay such an obligation. As such, this Court declines to follow the decisions of *In re Drinkard* and *In re Lutzke* which clearly adopted a more restrictive approach in determining whether an overpayment of child support was entitled to favorable treatment under the Bankruptcy Code. Therefore, in this case, since the overpayments at issue were made pursuant to the Parties' original order for child support, the Court must find that the Plaintiff was under a legal duty to make such payments. Accordingly, it is the holding of this Court that the overpayments made by the Plaintiff fall within the exception to discharge set forth in 11 U.S.C. § 523(a)(5). As it pertains to this decision, however, a final word needs to be said.

The Debtor has argued that many of the overpayments received by her could have been prevented if the Plaintiff had simply filed for an order staying the garnishment of his wages. The Court, however, while it agrees that the Plaintiff may have been dilatory in seeking to enforce his legal rights, does not feel that this fact excuses the Debtor from dissipating those funds to which she was not otherwise entitled to receive. In coming to this decision, it is particularly noted that the Debtor was

---

**5.** Section 17a(7) of the Bankruptcy Act provides, in pertinent part: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (7) are for alimony due or to become due, or for the maintenance or support of wife or child ...."

clearly aware of the Court order which had terminated the Plaintiff's obligation to pay child support. Thus, basic principles of equity will not allow this Court to intervene in a situation where the Debtor, having wrongfully kept the Plaintiff's money, does not come to this Court with clean hands.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiffs, Allen County Child Support Enforcement Agency and Cory Ray Curl, be, and is hereby, *GRANTED.*

It is **FURTHER ORDERED** that any and all amounts received by the Defendant/Debtor as an overpayment of child support, be, and is hereby, determined to be a Nondischargeable Debt.