OPINION
{¶ 1} Plaintiff-appellant, Charles V. Kassicieh ("Kassicieh"), appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, filed May 31, 2005, determining parenting issues and child support. Defendant-appellee, Ann M. Mascotti-Kassicieh ("Mascotti"), filed notice of a cross-appeal. The matter was then stayed pending Mascotti's bankruptcy proceedings. Thereafter, Mascotti filed an appeal from a September 27, 2006 judgment, finding that Kassicieh could collect the overpayment of child support owed by Mascotti to Kassicieh, despite a bankruptcy court's discharge of the same. The above appeals have been consolidated for our review.
 {¶ 2} For ease of discussion, we will first set forth the parties' stated assignments of error. Kassicieh brings one assignment of error for our review: THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ALLOCATE OR REALLOCATE THE GUARDIAN'S FEES BETWEEN THE PARTIES ON AN EQUITABLE BASIS.
 {¶ 3} Mascotti brings the following as cross-assignment of error:
 THE TRIAL COURT ERRED BY DETERMINING APPELLANT'S CHILD SUPPORT OBLIGATION PURSUANT TO R.C. § 3119.04 INSTEAD OF R.C. § 3113.215, THE STATUTE IN EFFECT AT THE TIME THE ACTION COMMENCED.
 {¶ 4} Mascotti brings the following two assignments of error for our review:
 I. THE TRIAL COURT'S FINDING THAT THE DEBT OWED TO PLAINTIFF, CHARLES V. KASSICIEH, BY DEFENDANT, ANN M. MASCOTTI, FOR PLAINTIFF'S OVERPAYMENT OF CHILD SUPPORT IS IN THE NATURE OF CHILD SUPPORT, SO AS TO FALL UNDER THE EXCEPTION OF 11 U.S.C. 523(A)(5)(b) WAS REVERSIBLE ERROR.
 II. THE TRIAL COURT'S FINDING THAT THE DEBT OWED TO PLAINTIFF, CHARLES V. KASSICIEH, BY DEFENDANT, *Page 3 
ANN M. MASCOTTI, IS NONDISCHARGEABLE IN BANKRUPTCY CONSTITUTES REVERSIBLE ERROR.
 {¶ 5} The majority of facts relevant to these appeals are not in dispute. Kassicieh, a physician, and Mascotti, a nurse, met in 1989, and shared a residence, but were never married. The parties are the parents of two children, Sara N. Kassicieh, born September 24, 1993, and Erika M. Kassicieh, born April 2, 1995. As the parties' relationship deteriorated, Kassicieh filed a motion for custody of the minor children on August 24, 2000. At the time Kassicieh moved for custody, the court appointed a guardian ad litem ("GAL"), and ordered a deposit of $800 to be paid by the parties, with $600 being paid by Kassicieh, and $200 being paid by Mascotti. The trial court also issued a temporary child support order effective September 1, 2000, ordering Kassicieh to pay the sum of $2,368.58 per month, plus a two percent processing fee for support of the two minor children. After a plethora of motions, the matter came for hearing before a magistrate on February 14, 2002, and included consideration of the complaint for custody, a March 29, 2001 motion to modify parental rights and child support, an October 19, 2001 motion for an interim modification of the allocation of parental rights, a January 11, 2002 motion to set aside the magistrate's order, a June 7, 2002 motion to impound child support, and Mascotti's May 9, 2001 motion to modify.
 {¶ 6} The magistrate's decision filed December 18, 2003, determined custodial and visitation issues. In addition, the magistrate applied R.C. 3119.04,[1] and reduced Kassicieh's child support obligation to $1,499.26 per month plus a two percent processing fee effective March 22, 2001. The retroactive reduction in child support *Page 4 
created an overpayment of child support in the amount of approximately $28,000. The magistrate's decision also ordered the parties to "promptly pay all balances due to the Guardian ad Litem from him and her pursuant to the prior orders of this Court." (Magistrate's Dec. 18, 2003 Decision, at 20.) Both parties filed objections to the magistrate's decision. As is relevant to these appeals, the third of Mascotti's three objections was as follows: "That the Magistrate erred, as a matter of law, to modify the support. He finds that the modification of the support would cause Defendant financial hardship. He further goes through Plaintiff's income but fails to attribute his contractual value, which was $220,000.00. Further, to create the overpayment is a hardship upon Defendant. Defendant had further submitted her financial needs and the hardship of the prolonged litigation, when combined with the hardship of the arrearage, have caused both her and her children to suffer." (Jan. 7, 2004 Objections at 1-2.) Also relevant to the matters before us is Kassicieh's third objection to the magistrate's decision, wherein he contends the magistrate erred in failing to allocate the GAL's fees between the parties.
 {¶ 7} The objections came for hearing before the trial court, and the trial court overruled the parties' objections and sustained the magistrate's decision in all matters with the exception of ownership of the children's passports. Regarding the child support modification, the trial court stated that it reviewed the magistrate's findings and attached worksheet and found that neither party presented adequate evidence to demonstrate that the calculated amount was unjust. With respect to the payment of the GAL fees, the trial court did not explicitly discuss the matter other than to state that Kassicieh's objection was overruled. *Page 5 
 {¶ 8} Kassicieh filed an appeal of the trial court's May 31, 2005 decision taking issue with the trial court's disposition of his objection relating to the fees owed to the GAL. Mascotti filed notice of a cross-appeal. Thereafter, on October 27, 2005, Mascotti filed a suggestion of stay on the basis of her filing a petition for relief in a United States Bankruptcy Court. Based on the filings in Bankruptcy Court, this court stayed the matter until release by the Bankruptcy Court. On March 27, 2007, Mascotti filed a notice of the completion of her bankruptcy proceedings, and the stay was subsequently vacated.
 {¶ 9} Meanwhile, on February 1, 2006, Kassicieh filed a motion to liquidate the child support overage in the trial court. Mascotti filed a motion to dismiss, arguing that because she listed Kassicieh as a creditor for a potential domestic claim in the amount of $30,000, Kassicieh was required to seek relief from the Chapter 13 estate for payment of the claim and was barred from pursuing her personally. The magistrate hearing the matter agreed with Mascotti and dismissed Kassicieh's motion. Kassicieh filed objections to the magistrate's decision. The trial court overruled the decision of the magistrate as to the issue of the overpayment of child support. Because the Bankruptcy Court did not make a specific determination as to whether the overpayment constituted support, and because state courts have concurrent jurisdiction with bankruptcy courts to determine whether a particular obligation is a support obligation, the trial court found that it had jurisdiction to determine the character of the debt. The trial court went on to find that the overpayments were in the nature of support, and therefore, not dischargeable in bankruptcy. Thus, the trial court held that Kassicieh may collect said debt despite the fact that his claim was disallowed in Mascotti's bankruptcy. Thereafter, Mascotti filed an *Page 6 
appeal of the trial court's decision, and the matter was consolidated with the previously filed appeals.
 {¶ 10} Kassicieh's assignment of error relates to the decision of the trial court that adopted the magistrate's decision ordering the parties to pay the outstanding GAL fees. Kassicieh contends, however, that there was neither a finding by the trial court of any specific amount owed to the GAL, nor was there any reference to the allocation of fees that was to be paid by each party. The only order setting an amount of fees is that of September 20, 2000, in which the court ordered that Kassicieh pay $600 and Mascotti pay $200 of the required $800 deposit. Though the GAL filed an affidavit indicating an outstanding balance of $52,489.35, $39,765.55 of which was owed by Kassicieh, there is no court order finding the same.
 {¶ 11} Upon review of the record, it appears Kassicieh is correct that there is not a judgment by the court indicating either the total dollar amount to be paid to the GAL, or the amount to be paid by each party. Therefore, Kassicieh's single assignment of error is sustained, and this matter is remanded to the trial court for a determination of the total amount of GAL fees to be paid and the amount to be paid by each of the parties.
 {¶ 12} Mascotti's cross-assignment of error relates to the retroactive reduction in child support of approximately $870 per month resulting in an approximate $28,000 overpayment of child support now owed from Mascotti to Kassicieh. Initially, we note that a trial court has considerable discretion relating to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390. An abuse of discretion exists when the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. *Page 7 Blakemore (1983), 5 Ohio St.3d 217, 219. There is no abuse of discretion where there is some competent, credible evidence supporting the trial court's decision. Ross v. Ross (1980), 64 Ohio St.2d 203, 208.
 {¶ 13} On October 12, 2000, the trial court issued a temporary child support order effective September 1, 2000, ordering Kassicieh to pay, pursuant to R.C. 3113.215, the sum of $2,368.58 per month plus a two percent processing fee for support of the two minor children. After two filings for modification of parental rights and responsibilities, on March 29, 2001 and October 19, 2001, the matter was finally resolved on December 13, 2003, via the magistrate's decision. The magistrate applied R.C. 3119.04, which went into effect on March 22, 2001, with the enactment of Am. Sub. S.B. No. 180. Am. Sub. S.B. No. 180 repealed R.C.3113.215, and enacted in its place, R.C. Chapter 3119 et seq. R.C.3119.04 contains a provision that calculates child support for combined annual incomes equal to or greater than $150,000. According to R.C.3119.04, there is a presumption, subject to rebuttal, that the child support obligation for two minor children should be limited to $21,971[2] Because there is no language indicating that R.C. 3119.04
be applied retroactively, and because this matter was originally filed in September 2000, Mascotti contends that not only was there no reason to modify the child support amount, there was no basis for the trial court to utilize R.C. 3119.04 in place of R.C. 3113.215.
 {¶ 14} In addition to arguing the trial court was correct in its application of R.C. 3119.04, Kassicieh contends Mascotti failed to raise this issue in the trial court, and is *Page 8 
therefore, barred from raising it on appeal. Thus, we must first address whether Mascotti raised the foregoing issue in the trial court.
 {¶ 15} Civ.R. 53(D)(3)(a)(ii)[3] provides, that "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law * * * unless the party has objected to that finding or conclusion * * *." See, e.g., Carter v. Carter, Franklin App. No. 05AP-745, 2006-Ohio-1206; Buford v. Singleton, Franklin App. No. 04AP-904, 2005-Ohio-753; Brown v. Zurich, 150 Ohio App.3d 105,2002-Ohio-6099, appeal denied, 98 Ohio St.3d 1491, 2003-Ohio-1189. Thus, Civ.R. 53 imposes an affirmative duty on the parties to make timely specific objections to the trial court, identifying any error of either law or fact in the magistrate's decision. Carter; O'Connor v. TransWorld Servs., Franklin App. No. 05AP-560, 2006-Ohio-2747, discretionary appeal not allowed, 111 Ohio St.3d 1432, 2006-Ohio-5351. This rule is based upon the general precept that an appellate court will not address errors that arose at trial and could have been avoided or corrected but were not brought to the attention of the trial court. Adams v.Speakman (Nov. 30, 2000), Franklin App. 00AP-552, citing Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 121.
 {¶ 16} The failure to file objections to the magistrate's decision constitutes a waiver of the right to appellate review of all but plain error. Carter, at ¶ 17, citing Buford. The plain error doctrine is not favored in civil proceedings and is reserved for only the most "exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, *Page 9 
thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss, syllabus; In re J.MB., Franklin App. No. 06AP-1138,2007-Ohio-3876.
 {¶ 17} In this case, though Mascotti timely filed objections to the magistrate's December 18, 2003 decision, the record indicates that she did not raise the issue of the magistrate's application of R.C. 3119.04
to the matter at hand. As mentioned previously, Mascotti's objection with respect to child support was as follows:
 That the Magistrate erred, as a matter of law, to modify the support. He finds that the modification of the support would cause Defendant financial hardship. He further goes through Plaintiff's income but fails to attribute his contractual value, which was $220,000.00. Further, to create the overpayment is a hardship upon Defendant. Defendant had further submitted her financial needs and the hardship of the prolonged litigation, when combined with the hardship of the arrearage, have caused both her and her children to suffer.
 (Jan. 7, 2004 Objections 1-2.)
 {¶ 18} Mascotti's objection focuses on the magistrate's failure to award child support above the presumed amount, and the inequities of the creation of an overpayment of child support. Further, the trial court's decision of May 31, 2005 makes no reference to there being an issue as to what statute to apply, which further implies Mascotti did not raise this issue to the trial court. Accordingly, we find that Mascotti failed to raise this issue in the trial court, and therefore, waived such issue on appeal.
 {¶ 19} We also fail to find plain error in the case at bar. This matter does not present the extremely rare case that involves exceptional circumstances where the alleged errors seriously affect the basic fairness, integrity, or public reputation of the judicial process itself. Such is especially so here, where appellate courts have applied R.C. 3119.04 to actions initially filed prior to March 22, 2001, but in which motions to *Page 10 
modify support amounts were filed after the effective date of the statute. See Guertin v. Guertin, Franklin App. No. 06AP-1101,2007-Ohio-2008 (applying R.C. 3119.04 to calculate child support where original divorce action was filed in 1997, and the mother sought administrative review of the child support amount in 2002); Lyons v.Bachelder, Morrow App. No. 2004-CA-0018, 2005-Ohio-4887 (applying R.C.3119.04 where the parties were divorced in 1996 and the motion to modify support was filed in 2002); Tonti v. Tonti, Franklin App. No. 03AP-494,2004-Ohio-2529, appeal denied, 103 Ohio St.3d 1478, 2004-Ohio-5405
(reviewing child support calculations under R.C. 3113.215, the statute in effect at the time of the hearing on the motion for child support);Zahn v. Zahn, Summit App. No. 21541, 2003-Ohio-6124 (applying the child support worksheet in effect at the time the motion for support is filed rather than the one in effect at the time the initial divorce is filed);Posadny v. Posadny, Montgomery App. No. 19636, 2003-Ohio-783 (applying R.C. 3119.04 which became effective after the magistrate's decision, but prior to the trial court entering final judgment). Cf. Harbour v.Ridgeway, Franklin App. No. 04AP-350, 2005-Ohio-2643, discretionary appeal not allowed, 106 Ohio St.3d 1556, 2005-Ohio-5531 (applying R.C.3113.215 where both the original parentage action, and the motion to modify were filed prior to the statute amendment); Bates v. Bates, Franklin App. No. 04AP-137, 2005-Ohio-3374 (applying R.C. 3113.215 where the original action and the motion to modify were filed prior to the statute change).
 {¶ 20} Consequently, we overrule Mascotti's cross-assignment of error.
 {¶ 21} Left for our review are Mascotti's first and second assignments of error, both relating to the trial court's September 27, 2006 decision that held the child support overpayment owed to Kassicieh by Mascotti was not dischargeable in Mascotti's *Page 11 
bankruptcy. Because these two assignments of error are interrelated, we will address them jointly.
 {¶ 22} Though not presented as an issue on appeal, we find it necessary to review the court's jurisdiction to determine whether Mascotti's debt is in the nature of a support obligation, and therefore, not dischargeable in bankruptcy. While many types of debts are dischargeable, a debt arising to a spouse, former spouse, or child of the debtor for support of such spouse or child in connection with an order of a court of record, is not dischargeable in bankruptcy. Section 523(a)(5), Title II, U.S.Code. This includes any liability which is actually in the nature of alimony, maintenance, or support. Former Section 523(a)(5)(B), Title II, U.S. Code . State courts have concurrent jurisdiction with bankruptcy courts to determine whether a particular obligation is a support obligation, and therefore, whether it is dischargeable in bankruptcy. Barnett v. Barnett (1984), 9 Ohio St.3d 47.
 {¶ 23} "[W]hen dischargeability of a marital debt is not raised in bankruptcy court, then it is an issue which may be ruled on by a court with concurrent jurisdiction after the discharge in bankruptcy."Loveday v. Gary, Belmont App. No. 02 BA 13, 2003-Ohio-1431, at ¶ 18, citing In re Ball (E.D.Ark. 1995), 181 B.R. 384; Collins v. Collins
(1993), 208 Ga.App. 862; Jordan v. Jordan (Ct.App.1990), 166 Ariz. 408;State ex rel. Austin v. Austin (1986), 221 Mont. 488; Pellitteri v.Pellitteri (Ct.App. 1985), 127 Wis.2d 559; In re Littlefield (D.Maine 1982), 17 B.R. 549. See, also, Clemons v. Clemons (July 13, 1993), Franklin App. No. 92AP-1196; Asad v. Asad (Dec. 13, 2001), Cuyahoga App. No. 79258.
 {¶ 24} The record reveals that the bankruptcy court did not make a determination as to whether Mascotti's obligation to pay Kassicieh was not in the nature of support, and *Page 12 
therefore, dischargeable in bankruptcy. Thus, we possess jurisdiction to hear this matter, and we now turn to the character of the overpayment.
 {¶ 25} Initially, we would like to note that contained in Mascotti's assignments of error is an argument that the trial court erred in relying on former Section 523(a)(5)(B), Title II, U.S. Code, because said provision is no longer part of the statute. Mascotti is correct that Section 523, Title II, U.S. Code was amended on April 20, 2005. However, the amendments went into effect 180 days after their enactment, and therefore, apply to bankruptcy proceedings filed on or after October 17, 2005. A review of the record reveals that Mascotti filed her petition for bankruptcy on October 10, 2005, which establishes the trial court indeed reviewed the appropriate statute.
 {¶ 26} Former Section 523, Title II, U.S. Code, provided, in part:[4]
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 3128(b) of this title does not discharge an individual debtor from any debt —
 * * *
 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that — *Page 13 
 * * *
 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]
 {¶ 27} The sole issue presented here is whether an overpayment of child support is included within the exception to discharge set forth in Section 523(a)(5), Title II, U.S.Code. This issue is one of first impression for Ohio state courts, and like the trial court, we will look to the bankruptcy courts for guidance.
 {¶ 28} Relying on In re Calhoun (C.A.6, 1983), 715 F.2d 1103, Mascotti first contends the trial court failed to consider the meaning of the phrase "actually in the nature of support" contained in Section 523(a)(5)(B), and urges application of Calhoun to the matter at hand. InCalhoun, pursuant to the parties' separation agreement, the husband assumed five joint monetary obligations. Though found in the section of the separation agreement labeled "Division of Property," the agreement characterized the assumption of the five debts as alimony. To determine whether the husband's assumption of the debts constituted alimony excepted from discharge under Section 523(a)(5), the court applied a four-part test. The four requirements of this test are: (1) the intent of the state court or the parties was to create a support obligation; (2) the support provision has the actual effect of providing necessary support; (3) the amount of the support provision is not so excessive as to be unreasonable under traditional concepts of support; and (4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law. In re Baker (N.D.Ohio 2002), 294 B.R. 281, citing In re Luman
(Bankr.N.D.Ohio 1999), 238 B.R. 697. Because the bankruptcy court inCalhoun applied an incorrect legal standard to the matter before it, *Page 14 
and because the bankruptcy court failed to consider each loan obligation individually, the matter was remanded to the bankruptcy court for consideration in light of the enunciated standards.
 {¶ 29} Mascotti contends application of Calhoun's four-part test makes clear that the obligation owed by Mascotti to Kassicieh cannot be construed as a liability "actually in the nature of support," because neither the court nor the parties intended it to be a support obligation, no support obligation was ever ordered between Mascotti and Kassicieh, and the debt was never labeled a support obligation. According to Mascotti, Kassicieh's child support obligation simply metamorphosed into a debt that is not excepted under Section 523(a)(5).
 {¶ 30} In In re Baker, supra, the bankruptcy court declined to applyCalhoun's four-part test to determine whether an overpayment of child support is included within the exception to discharge set forth in Section 523(a)(5). In Baker, the father continued to have his wages garnished despite a court order terminating support. The mother filed for relief under Chapter 7 of the United States Bankruptcy Code, and included the overpayments she received for child support, contending that such debt was simply "garden variety unsecured debt" and therefore, dischargeable. Id. at 284. The issue before the court in Baker was "whether an overpayment of child support is included within the exception to discharge set forth in Section 5223(a)(5), Title II, U.S.Code." Id.
 {¶ 31} In declining to apply Calhoun's four-part test, the court inBaker observed that Calhoun was addressing the "actually in the nature of support" language of Section 523(a)(5)(B), which is meant to ensure that an obligation labeled as support is not actually a property settlement or other equitable division of marital property in disguise. Id. at 285. *Page 15 
Thus, the Baker court rationalized that in the context of a child support obligation, children generally do not have an interest in their parents' property, and thus, an obligation labeled as child support, would rarely, if ever, be a division of property between a parent and a child. Because there was no assertion that a division of property had been made, the Baker court found that application of theCalhoun test would not be determinative of the issue presented, i.e., whether an overpayment in child support is a dischargeable debt, but rather, principles of statutory interpretation would. Id. Here, as inBaker, we are not presented with an argument regarding a division of property, and based on Baker's rationale, we decline to apply the test from Calhoun to the facts of the case at bar.
 {¶ 32} In addition to discussing Calhoun, the Baker court also discussed In re Lutzke (D.Oregon 1998), 223 B.R. 552, and In reDrinkard (N.D.Texas 2000), 245 B.R. 91, two cases presenting bankruptcy courts with the task of determining whether an overpayment of child support is "in the nature of support" so as to fall under the Section 523(a)(5), exception to dischargeability.
 {¶ 33} In Lutzke, the wife filed a Chapter 13 bankruptcy petition, and the husband claimed his debt of $3,629.54 for child support overpayment was entitled to priority status under Section 507(a)(7), Title II, U.S.Code.[5] In determining whether the debt was in the nature of support, the Lutzke court focused on the husband's lack of need, and found that *Page 16 
Oregon law would not consider the husband's overpayment claim to be "child support." Therefore, the court held that the husband's claim should be allowed as a general unsecured claim.
 {¶ 34} Lutzke was cited a few years later by the Bankruptcy Court for the Northern District of Texas in Drinkard, wherein the husband argued the $3,953.50 owed to him by his former wife as an overpayment of child support was not dischargeable pursuant to Section 523(a)(5). TheDrinkard court analyzed Indiana law, and noted that the judgment was not one for alimony, maintenance, spousal or child support, nor did it provide any benefit to the obligee or the child. After review, the court in Drinkard relied on Lutzke, and determined the judgment at issue was not in the nature of alimony, maintenance, spousal or child support so as to be nondischargeable under Section 523(a)(5).
 {¶ 35} Baker discussed both Lutzke and Drinkard, but declined to follow either. According to Baker, two interpretations of Section 523(a)(5) are available: (1) a broader interpretation, that for purposes of Section 523(a)(5), Title II, U.S. Code a debt is "for * * * support of such * * * child" whenever there is a legal duty to pay such obligation; and (2) a more restrictive interpretation that the "for * * * support of such * * * child" language is satisfied only when the obligation is, in fact, paid for the direct support of the child.
 {¶ 36} Baker first rejected Lutzke and Drinkards consideration of the "need" of the parent-creditor finding no support for such analysis in the statute. Baker then distinguished the two cases on the grounds that applicable state law provides that an overpayment of child support still retains its character as a support obligation.
 {¶ 37} Finally, and perhaps most persuasively, the court inBaker observed that "§ 523(a)(5) explicitly provides that for an obligation to be nondischargeable it does not *Page 17 
have to arise from a court order, but only `in connection with' an `order of a court of record[.]'" Id. at 287. The Baker court concluded:
 * * the intent of § 523(a)(5) clearly aligns itself much more closely with the position that, as the phrase is used in § 523(a)(5), an obligation is "for * * * support of such * * * child" whenever there is any legal duty to pay such an obligation. As such, this Court declines to follow the decisions of In re Drinkard and In re Lutzke which clearly adopted a more restrictive approach in determining whether an overpayment of child support was entitled to favorable treatment under the Bankruptcy Code. Therefore, in this case, since the overpayments at issue were made pursuant to the Parties' original order for child support, the Court must find that the Plaintiff was under a legal duty to make such payments.
Id. at 288.
 {¶ 38} Based on the above, the court held that the overpayments made by the husband fell within the exception to discharge set forth in Section 523(a)(5) .
 {¶ 39} We find the reasoning of the Baker court persuasive. The overpayments here were made pursuant to an order for child support, and as such Kassicieh was under a legal duty to make such payments. Following Baker's interpretation of Section 523(a)(5), we hold that the overpayments made by Kassicieh fall within the exception to discharge set forth in Section 523(a)(5).
 {¶ 40} Accordingly, we overrule Mascotti's first and second assignments of error.
 {¶ 41} For the reasons set forth in this opinion, Kassicieh's single assignment of error is sustained to the extent that there is not an order establishing the total amount of GAL fees owed, and the portion owed by each party, Mascotti's cross-assignment of error is overruled, as are her two stated assignments of error, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch is *Page 18 
reversed in part, and affirmed in part. Further, this matter is hereby remanded to that court for further proceedings consistent with law and this opinion.
Judgment reversed in part and affirmed in part; cause remanded forfurther proceedings.
KLATT and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] R.C. 3119.04 went into effect on March 22, 2001, and repealed R.C.3113.215, the statute under which child support was initially calculated for the temporary support order.
[2] Under former R.C. 3113.215, there was a rebuttable presumption that the correct amount of child support for combined incomes equal to, or greater than, $150,000 was calculated by using the same fixed percentage of income used in the guidelines at the $150,000 level to calculate the amount of support for incomes above the guidelines. In other words, if the guideline percentage for two children at $150,000 was 14.6 percent of the combined incomes to be allocated as child support, then the court had to apply the same 14.6 percent to the combined incomes above $150,000 in a case with two children.
[3] Formerly Civ.R. 53(E)(3)(d).
[4] Section 523, Title II, U.S. Code now provides, in part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [sections 727, 1141, 1228(a), 1228(b), or 1328(b), Title II, U.S.Code] does not discharge an individual debtor from any debt —
* * *
(5) for a domestic support obligation[.]
Thus, the April 20, 2005 amendment to Section 523, Title II, U.S. Code abolished the distinction between alimony, child support, and property settlement obligations by combining all such matters into "domestic support obligations" ("DSO"). Thus, even under the new statute, we would still be required to determine whether this overpayment's character is that of a DSO, and reliance upon bankruptcy case law discussing former Section 523, Title II, U.S. Code would not be misplaced.
[5] Section 507(a)(7) provides a seventh priority claim for:
* * * allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt —
(A) is assigned to another entity, voluntarily, by operation of Law, or otherwise; or
(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. *Page 1