DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Billy Markley, appeals the judgment of the Wayne County Court of Common Pleas Domestic Relations Division. We affirm.
 I. {¶ 2} Appellant, Billy Markley ("Father"), and Appellee, Monica Markley ("Mother"), were divorced pursuant to the magistrate's order dated January 29, 2002 in the Wayne County Court of Common Pleas Domestic Relations Division, which was adopted by the trial court on January 30, 2002. Pursuant to the divorce decree, Mother became the residential parent of the parties' son, "R.M.", and daughter, "D.M."
 {¶ 3} With regard to the division of marital assets, the magistrate ordered that Father would receive the mortgaged marital residence and that Father was responsible for the monthly mortgage payments and real estate taxes. Father was also ordered to refinance the mortgages to clear the title of Mother's name. The order specified that if Father was not able to refinance *Page 2 
within 90 days, he had to put the house up for sale. The magistrate further ordered that any proceeds from that sale would first be applied to satisfy the indebtedness and any remaining amount would be divided between the parties. In addition, the magistrate held Father responsible for any deficiency on the mortgages after the sale. The magistrate held that, if the residence did not sell after being on the market for six months, the parties were to return to court to arrange a different disposition of the property.
 {¶ 4} The magistrate held Father responsible for all the business and credit card debt. In addition, it held him responsible for Mother's school loan debt. Father was charged with a total $101,250 in marital debt. Father filed several objections including objections to the trial court's division of marital property. The trial court overruled all of Father's objections.
 {¶ 5} A few months after the order was docketed, Father filed for bankruptcy. Father asserts that on December 27, 2002, he obtained an order from the bankruptcy court discharging his duty to pay the creditors and relieving him from paying the mortgage on the marital residence.[1]
 {¶ 6} In 2004, Mother moved with the children to Flagstaff, Arizona. Father then filed a motion for reallocation of parental rights and responsibilities. That motion was overruled. In the magistrate's decision which was adopted by the trial court, Mother was ordered to pay for transportation costs for the children for their Christmas and summer visitation with their Father.
 {¶ 7} The evidence reflects that in the fall of 2006, Mother was having financial difficulties and could not afford to purchase plane tickets for the children's Christmas vacation to Ohio. Father could also not afford to pre-pay for those tickets. On March 9, 2007, Father filed a *Page 3 
motion requesting that Mother be found in contempt for failing to comply with the court's previous order pertaining to paying for airfare for the children's visitation. In turn, on April 3, 2007, Mother filed a motion requesting that Father be found in civil contempt for failing to pay marital debt and medical expenses as ordered. Mother asked the court to find that the debts were nondischargeable. Shortly thereafter, Mother sought to have Father held in criminal contempt, in addition to the civil contempt of court, for his failure to comply with the court's order regarding his payment of debts.
 {¶ 8} The magistrate held a hearing on the motions on July 12, 2007. On August 6, 2007, the magistrate issued an order on the motions. The magistrate found Father only in civil contempt, not criminal contempt. The magistrate determined that, with the exception of the mortgages, the debts were in the nature of support and were not, therefore, dischargeable in bankruptcy. The magistrate also found Mother in civil contempt, however, it relieved her duty to comply with the 2002 order requiring her to pay airfare for the children's trips to Ohio.
 {¶ 9} The trial court adopted the magistrate's decision. Father timely appealed the trial court's order, raising one assignment of error for our review. Mother cross-appealed the trial court's order finding her in civil contempt. Mother's cross-appeal was later dismissed as untimely.
 II. ASSIGNMENT OF ERROR "THE COURT ERRED IN FINDING THAT [FATHER] HAD ANY OBLIGATION TO [MOTHER] FOR DEBTS THAT HE HAD DISCHARGED IN BANKRUPTCY WHEREIN [MOTHER] WAS ALSO A LISTED CREDITOR DULY SERVED WHO THEREAFTER FAILED TO FILE ANY COMPLAINTS TO DETERMINE DISCHARGEABILITY IN THE BANKRUPTCY COURT." *Page 4 
 {¶ 10} In his sole assignment of error, Father claims that the trial court erred in finding that he had any obligation to Mother for debts that he had discharged in bankruptcy wherein Mother was also listed as a creditor who thereafter failed to file any complaints to determine her dischargeability in the bankruptcy court. We disagree.
 {¶ 11} At the outset, we note that Father, as the appellant, bears the burden of demonstrating error on appeal. See App.R. 16(A)(7). Father has failed to provide a statement of facts relevant to the assignment of error with appropriate references to the record as required by App.R. 16(A)(6). Further, App.R. 16(A)(7) requires that the appellant's brief include an argument containing "the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which the appellant relies." "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. "If an argument exists that can support [Father's contentions], it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. No. 18349, at *8. Father has neglected to point to the portions of the record that support his assignment of error. See App. R. 16(A)(7). This Court, therefore, is permitted to disregard his argument in its entirety. App.R. 12(A)(2); Loc.R. 7(F).
 {¶ 12} However, even if Father had provided citations to the record in support of his argument, his assignment of error still fails. In the trial court, Mother sought the court's determination of whether the debts at issue were dischargeable in Father's bankruptcy. On appeal, Father challenges only the trial court's jurisdiction to consider the dischargeability of the debts, he does not challenge the trial court's finding that the debts were in the nature of support. Accordingly, we will only examine the jurisdictional issue. *Page 5 
 {¶ 13} Whether or not the trial court had jurisdiction to consider the dischargeability of Father's debts is a question of statutory interpretation. "Statutory interpretation involves a question of law; therefore, we do not give deference to the trial court's determination."Donnelly v. Kashnier, 9th Dist. 02CA0051M, 2003-Ohio-639, at ¶ 26, citing State v. Wheeling Lake Erie Ry. Co. (Mar. 13, 2002), 9th Dist. No 3214-M, at *3. "This court reviews a trial court's interpretation and application of a statute under a de novo standard." Id.
 {¶ 14} The record reflects that Father declared bankruptcy in 2002. Notably, 11 U.S.C. 523, which governs exceptions to discharge in bankruptcy, was significantly amended effective in 2005.[2] However, our analysis is confined to bankruptcy law in place prior to 2005.
 {¶ 15} While Father could discharge many of his debts through his bankruptcy proceeding, a debt owed to a spouse, former spouse or child in connection with a court order is *Page 6 
not dischargeable in bankruptcy. 11 U.S.C. 523(a)(5). This includes any liability which "is actually in the nature of alimony, maintenance, or support[.]" 11 U.S.C. 523(a)(5)(B). Contrary to Father's assertions on appeal that Wife waived her ability to challenge Father's discharge of any obligation owed to her because she failed to file an objection to the discharge in bankruptcy court, Wife's alleged failure to challenge the dischargeability of Father's debt in bankruptcy court does not automatically preclude her from challenging the dischargeability of the debt in state court. Loveday v. Loveday, 7th Dist. No. 02 BA 13, 2003-Ohio-1431, at ¶ 1 (holding that "debts in the nature of spousal support are not automatically discharged in bankruptcy").
 {¶ 16} Father asserts, without citation to authority, that "[t]he Bankruptcy Court is the only court in which there can be had litigation concerning the dischargeability of the debtors. Federal not state law is controlling." We agree that Federal law, not State law, controls the determination "as to whether an obligation for a debt will be considered as alimony, maintenance or support." Loveday, supra, at ¶ 10. See, also,In re Calhoun (C.A.6, 1983), 715 F.2d 1103, 1107 (explaining that although Congress intended that Federal law, not State law, would control the determination as to whether an assumption of joint debts is in the nature of alimony or support, it does not necessarily mean that courts must ignore State law); Harrod v. Harrod (W.D.Kent. 1982),16 B.R. 711, 713 (holding that "[a]lthough this Court is not bound by State law as to what constitutes alimony, support, or maintenance, it can look to State law to determine the purpose of such payments"). The Sixth Circuit Court of Appeals in Calhoun, further explained the interplay between Federal and State law with regard to alimony or support:
 "The underlying obligation to provide support in the first place is necessarily determined by state law. The federal bankruptcy courts are obviously not empowered to create an obligation to support where it did not previously exist. *Page 7 
Moreover, there is no federal law of domestic relations. Divorce, alimony, support and maintenance are issues within the exclusive domain of the state courts." (Internal citations and quotations omitted.) Calhoun, 715 F.2d at 1107.
 {¶ 17} The Ohio Supreme Court has held that "State law may be used to develop Federal standards or to ascertain the incidents or nature of the debt to determine whether it fits within the exception." Barnett v.Barnett (1984), 9 Ohio St.3d 47, 49. However, state courts haveconcurrent jurisdiction with bankruptcy courts to determine whether a particular obligation was a support obligation and, therefore, whether it was dischargeable in bankruptcy. (Emphasis added.) Loveday, supra, at ¶ 10, citing Barnett, 9 Ohio St.3d at 49. See also In re Romeo (D.N.J. 1981), 16 B.R. 531, 534 (explaining that claims under Section 523(a)(5) are the type over which the Bankruptcy Court has concurrent and not exclusive jurisdiction to determine their dischargeable character).
 {¶ 18} As the Loveday court recognized, many of our sister courts have also made post-bankruptcy findings that a certain debt was not dischargeable, although these courts did not specifically examine whether they had jurisdiction to make this determination.Loveday, at ¶ 18, citing Vaughan v. Vaughan (1998), 131 Ohio App.3d 364;Ballinger v. Ballinger (1995), 107 Ohio App.3d 358; Rizzen v.Spaman (1995), 106 Ohio App.3d 95; Snyder v. Snyder (1995),105 Ohio App.3d 69. The Seventh District Court of Appeals explained that the latter cases comported with both state and federal court decisions which all held "that when dischargeability of a marital debt is not raised in bankruptcy court, then it is an issue which may be ruled on by a court with concurrent jurisdiction after the discharge in bankruptcy."Loveday, at ¶ 18.
 {¶ 19} Father has failed to cite any portion of the bankruptcy record, let alone a portion that shows whether the bankruptcy court made a determination as to whether his obligation to pay creditors including Mother was not in the nature of support and therefore dischargeable in *Page 8 
bankruptcy. See Kassicieh v. Mascotti, 10th Dist. No. 2007-Ohio-5079, at ¶ 23. In light of our sister courts' findings that Ohio courts had concurrent jurisdiction with bankruptcy courts over this subject matter, and in light of the lack of evidence that dischargeability was raised in the bankruptcy court, we find that the trial court possessed jurisdiction to hear this matter.
 {¶ 20} We agree with the Loveday court's finding that when determining whether Father's obligation to pay the marital debt was in the nature of support, the trial court was not acquiring jurisdiction over Father's bankruptcy action. Loveday, supra, at ¶ 22. "Instead, it [was] merely exercising its jurisdiction over this divorce action." Id. The domestic relations court and the bankruptcy court had concurrent jurisdiction over the issue, not the action. Id.
 {¶ 21} Accordingly, we find that the trial court had jurisdiction to determine whether Father's obligation to pay the marital debt was in the nature of support. Father's sole assignment of error is overruled.
 III. {¶ 22} Father's sole assignment of error is overruled, and the judgment of the Wayne County Court of Common Pleas Domestic Relations Division is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 9 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, P. J. concurs.
[1] Father has failed to provide any citations to the trial court or bankruptcy court record to support his factual assertions. See App.R. 16(A).
[2] The Tenth District Court of Appeals in Kassicieh v. Mascotti, 10th Dist. Nos. 05AP-684, 06AP-1224, 2007-Ohio-5079, at ¶ 26, fn. 4, discussed the 2005 amendment to Section 523(a)(5)(b), explaining:
 "Section 523, Title [11], U.S. Code now provides, in part:
 "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [sections 727, 1141, 1228(a), 1228(b), or 1328(b), Title [11], U.S.Code] does not discharge an individual debtor from any debt —
 "* * *
 "(5) for a domestic support obligation[.]
 "Thus, the April 20, 2005 amendment to Section 523, Title [11], U.S. Code abolished the distinction between alimony, child support, and property settlement obligations by combining all such matters into `domestic support obligations' (`DSO'). Thus, even under the new statute, we would still be required to determine whether this overpayment's character is that of a DSO, and reliance upon bankruptcy case law discussing former Section 523, Title [11], U.S. Code would not be misplaced."