[Cite as *Poling v. Poling*, 2013-Ohio-5141.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Linda S. Poling, | : | |
| Plaintiff-Appellee, | : | No. 13AP-189 |
| v. | : | (C.P.C. No. 10DR-06-2520) |
| Donald M. Poling, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 21, 2013

*Strip, Hoppers, Leithart, McGrath & Terlecky Co., L.P.A.*, *Kenneth R. Goldberg*, and *Nicholas W. Reeves*, for appellee.

*Rebecca J. Stumler*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

CONNOR, J.

{¶ 1} Defendant-appellant, Donald M. Poling ("appellant"), appeals from a judgment entry-decree of divorce issued by the Franklin County Court of Common Pleas, Division of Domestic Relations, on February 4, 2013.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant and plaintiff-appellee, Linda S. Poling ("appellee"), were married on July 13, 1985. Four children were born as issue of the marriage; one of whom is emancipated. On June 9, 2010, appellee filed a complaint for divorce. Appellant filed an answer and counterclaim for divorce on July 1, 2010.

{¶ 3} Prior to trial, the parties submitted an agreed shared parenting plan, an agreed shared parenting decree, and an in court settlement memorandum evidencing the parties' agreement as to all matters concerning disbursement of assets, allocation of liabilities, and parental rights and responsibilities. On June 20, 2012, trial commenced on the contested issues of child and spousal support, dependency exemptions, uncovered medical expenses, and attorney fees. On February 4, 2013, the trial court issued a judgment entry-decree of divorce.

## II. ASSIGNMENTS OF ERROR

{¶ 4} Appellant filed a notice of appeal to this court on March 6, 2013, assigning the following assignments of error:

> [I.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE CALCULATION OF DEFENDANT-APPELLANT'S INCOME FOR PURPOSES OF DETERMINING CHILD SUPPORT AND SPOUSAL SUPPORT.
>
> [II.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT DEFENDANT-APPELLANT HAD INCOME OF $172,829 ANNUAL INCOME BY AVERAGING THE DEFENDANT-APPELLANT'S THREE (3) YEAR AVERAGE OF COMMISSIONS ONLY INCOME IN VIOLATION OF R.C. §3119.05 MANDATORY PROVISIONS FOR CALCULATION OF COMMISSIONS.
>
> [III.] THE TRIAL COURT ARBITRARILY DETERMINED THE PLAINTIFF-APPELLEE'S INCOME WAS $36,389 AS A THREE YEAR AVERAGE BASED ON PRIOR YEARS INCOME AND ERRED AND ABUSED ITS DISCREATION [SIC] BY NOT IMPUTING INCOME AS DETERMINED BY THE VOCATIONAL EXPERT, DR. BRUCE GROWICK, IN THE AMOUNT OF $59,696 AS A REGISTERED NURSE FOR PURPOSES OF SPOUSAL SUPPORT AND CHILD SUPPORT CALCULATIONS.
>
> [IV.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO RECOGNIZE AND IMPUTE INCOME TO THE PLAINTIFF-APPELLEE'S FOR HER EARNING POTENTIAL AS A REGISTERED NURSE FOR PURPOSES OF CHILD SUPPORT CALULATIONS [SIC] AND DETERMINATION OF A SPOUSAL SUPPORT AWARD.

[V.]   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION GRANTING PLAINTIFF-APPELLEE GUIDELINE CHILD SUPPORT IN THE AMOUNT OF $1,855.36 PER MONTH WHEN HEALTH INSURANCE IS IN EFFECT AND $1,630.10 PER MONTH WHEN HEALTH INSURANCE IS NOT IN EFFECT PLUS CASH MEDICAL OF $220.00 PER MONTH PLUS PROCESSING FEES.

[VI.]   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING THE PLAINTIFF-APPELLEE THE DEPENDENCY TAX EXEMPTIONS FOR THE PARTIES THREE MINOR CHILDREN, AS THE DEFENDANT-APPELLANT RECEIVES A GREATER TAX BENEFIT FROM THE DEPENDENCY TAX EXEMPTION FOR THE PARTIES' THREE (3) MINOR CHILDREN.

[VII.]   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO GRANT THE DEFENDANT-APPELLANT A DEVIATION DOWNWARD FROM THE GUIDELINE CHILD SUPPORT AMOUNT IN LIGHT OF THE PARTIES' SHARED PARENTING PLAN, EQUAL PARENTING TIME, EXPENSES PAID BY THE DEFENDANT FOR THE MINOR CHILDREN AND THE NEED OF THE MINOR CHILDREN TO HAVE SIMILAR LIFESTYLES IN EACH PARENT'S HOMES.

[VIII.]   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ALLOCATING THE UNCOVERED ORIDNARY [SIC] MEDICAL EXPENSES FOR THE MINOR CHILDREN EQUALLY AND EXTRAORDINARY UNCOVERED MEDICAL EXPENSES WITH DEFNDANT-APPELLANT [SIC] PAYING 80% AND PLAINTIFF-APPELLEE 20% FROM THE CHILD SUPPORT WORKSHEET PERCENTAGES.

## III.  STANDARD OF REVIEW

{¶ 5}   In *Booth v. Booth,* 44 Ohio St.3d 142 (1989), the Supreme Court of Ohio determined that the abuse of discretion standard is appropriate for appellate review of matters concerning child support.  The same standard applies when we review a trial court's award of spousal support.  *Falk v. Falk,* 10th Dist. No. 08AP-843, 2009-Ohio-4973, ¶ 1.

{¶ 6} The term " 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Id.* at ¶ 11, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying this standard of review, an appellate court may not merely substitute its judgment for that of the trial court." *Havens v. Havens,* 10th Dist. No. 11AP-708, 2012-Ohio-2867, ¶ 6, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131 (1989). Furthermore, a reviewing court should not independently reweigh the evidence. *Lopez-Ruiz v. Botta,* 10th Dist. No. 11AP-577, 2012-Ohio-718, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

## IV. LEGAL ANALYSIS

### A. Child and Spousal Support

{¶ 7} Each of appellant's first seven assignments of error concern the trial court's determination of the parties' gross income for purposes of both child support and spousal support. "Gross income" includes the "total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and * * * commissions * * * and all other sources of income." R.C. 3119.01(C)(7).

#### 1. Appellant's income

{¶ 8} The trial court calculated appellant's yearly gross income at $172,879, the average of all commissions earned by appellant in the calendar years 2009 through 2011. In appellant's first and second assignments of error, appellant challenges the trial court's calculation of his gross income for purposes of both spousal support and child support. Accordingly, we will consider them together.

{¶ 9} The evidence establishes that Fifth Third Bank has employed appellant as an outside mortgage loan officer since 2009. Prior to that time, appellant worked as a mortgage loan officer for Wells Fargo Bank. Wells Fargo paid appellant on a commission only basis. At Fifth Third, appellant receives a monthly draw paid against future commissions, which means that he must deduct the monthly draw from commissions paid in the following month.

{¶ 10} Appellant correctly states that "gross income" does not include non-recurring or unsustainable income. R.C. 3119.01(C)(7)(e). However, to the extent that appellant claims that his commission income for the relevant time period is both non-

recurring or unsustainable, we have previously held that income entirely based on commission sales is not "nonrecurring," for purposes of determining a parent's child support obligation, simply because the parent testifies that such income will slow down in the future. *Gerlach v. Gerlach*, 10th Dist. No. 03AP-22, 2004-Ohio-1607, ¶ 16.

{¶ 11} Here, the evidence establishes that appellant earned commissions of $37,941.04 in 2007; $55,705.37 in 2008; $269,516.01 in 2009; $151,177.71 in 2010; $97,792.67 in 2011; and $75,273 in 2012.[1]  Based upon this evidence, it is clear that appellant's commission income, although variable, is both recurring and sustainable. Thus, the trial court did not abuse its discretion by including all of appellant's commission income in determining his gross income for purposes of his child support and spousal support obligations.

{¶ 12}   Appellant next contends that R.C. 3119.05(D) required the trial court to use his 2011 commission income as his gross income for purposes of calculating his support obligations.  R.C. 3119.05 provides in relevant part:

> (D) When the court or agency calculates the gross income of a parent, it shall include the lesser of the following as income from *overtime and bonuses*:
>
> (1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
>
> (2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed.

(Emphasis added.)

{¶ 13} Appellant argues that because as his 2011 commission of $97,792.67 is less than the three-year average of $172,829, R.C. 3119.05(D) demands that his 2011 commission income is his gross income for purposes of his support obligations.  However, R.C. 3119.05(D) speaks only to calculation of income from "overtime and bonuses."  Here, the income earned by appellant from 2009 to 2011 is purely commissions.  Although there is evidence that appellant received a one-time overtime payment in 2011, there is no

---

[1] Figure based upon commissions earned through December 30, 2012, but not yet paid as of the date of trial.

evidence that appellant received any other overtime wages or bonuses during the relevant periods of employment. Moreover, R.C. 3119.05(H) specifically states that "[w]hen the court or agency calculates gross income, the court or agency, *when appropriate*, may average income over a reasonable period of years." (Emphasis added.)

{¶ 14} In other words, R.C. 3119.05(H) permits a trial court to use income averaging, when appropriate, as the method for determining gross income from sources other than overtime and bonuses. Given the peaks and valleys in appellant's yearly commission income, the trial court's decision to employ income averaging in determining appellant's gross income was appropriate in this case. Similarly, the decision to limit the average to a three-year period of time is reasonable, under the circumstances, inasmuch as that particular period of time excludes the extraordinarily high level of commission income earned by appellant in 2008, and the unusually low level of commission earned by appellant in 2007. Thus, the method employed by the trial court provides a better estimate of appellant's future income.

{¶ 15} We also note that income averaging for purposes of both child support and spousal support has recently been approved under similar circumstances to those presented herein. *See, e.g.*, *Smith v. Smith,* 9th Dist. No. 26013, 2012-Ohio-1716, ¶ 29 (income averaging was appropriate for purposes of determining an award of spousal support where the husband's seasonal commissions were strongly affected by the strength of the economy); *Krone v. Krone*, 9th Dist. No. 25450, 2011-Ohio-3196, ¶ 18-19 (averaging commission based income of a real estate broker is appropriate where the evidence shows that commissions have declined with the real estate market); *York v. York,* 12th Dist. No. CA2011-03-016, 2011-Ohio-5872, ¶ 8-9 (income averaging is appropriate where the parent is a car salesman whose yearly commissions are inconsistent and unpredictable).

{¶ 16} Appellant testified that recent changes within Fifth Third have restricted his ability to market his services and to earn commissions. He also asserted that new federal regulations have been adopted, which limit broker compensation and which may require appellant to return commissions previously earned. Appellant's supervisor at Fifth Third, Brian Burstein, corroborated much of appellant's testimony. Based upon this testimony,

appellant argues that the trial court should have used his 2011 commission as his gross income, rather than the three-year average.

{¶ 17} The trial court was not convinced that the home mortgage industry is vanishing or that appellant's new compensation package at Fifth Third will drastically reduce his commission income in the future. We note that, upon cross-examination, Burstein acknowledged that appellant's new commission structure permits appellant to earn volume bonuses and that the basic commission structure, based upon points and tiers, has not been changed. He also noted that attrition has decreased the number of brokers competing in the market. Appellant acknowledged that the mortgage industry is cyclical.

{¶ 18} In short, our independent review of the evidence leaves us with the same impression as the trial court; that appellant still has the opportunity to earn the same or similar commission income in the future as he has earned in the past. Accordingly, we hold that the trial court did not abuse its discretion by electing to use a three-year average in determining appellant's gross income for purposes of calculating his support obligations.

{¶ 19} Appellant next contends that the trial court abused its discretion by failing to use appellant's 2012 income in calculating his average yearly commissions. On this point, we agree with appellant.

{¶ 20} The trial of this matter began in June 2012. However, for reasons outside of the parties' control, the trial was continued for several months and did not conclude until November 29, 2012. In its February 4, 2013 judgment entry-decree of divorce, the trial court made the following observations regarding appellant's income for calendar year 2012:

> Defendant introduces 6 months of his pay advices (from June through November 2012) to establish his draws and his year-to-date gross income of $72,473. Defendant also proffers 5 months of Residential Mortgage Originator Reports (aka "commission reports") from June through October 2012 and documentation of his "Benefit Choice Dollars" Program through Fifth Third Mortgage. DEF EX H, RR, SS, TT. Defendant also argues that he was converted to an hourly base (i.e., he is now paid an hourly rate). DEF EX I, M. In response to the Court's questioning, Defendant acknowledges that,

> despite all of these new changes to his compensation structure, through May 31, 2012 he earned $29,500.[9] DEF EX H.
>
> [9]This translates to $5,900 per month (or $70,800 per year) if the Court annualizes this figure over a 12-month period. In any event, Defendant's salary dwarfs that of Plaintiff's.

(Judgment Entry-Degree of Divorce, 15, fn. 9.)

{¶ 21} The trial court acknowledged that it was able to accurately determine appellant's 2012 income based upon the evidence in the record. However, the trial court disregarded this evidence, without explanation, when it calculated the three-year average of appellant's commissions. Having determined that income averaging was appropriate in this case, and that a three-year period of time was reasonable, we believe that it was incumbent upon the trial court to set forth its reasons for ignoring the most recent income information in calculating appellant's gross income. By comparison, if the trial court had been asked to determine the amount of overtime wages or bonuses included in appellant's gross income, it would have been required to use the most recent income information. *See* R.C. 3119.05(D).

{¶ 22} A trial court's judgment as to the amount of child support is unreasonable when it lacks a rational basis or there is no sound reasoning process to support it. *Vaughn v. Vaughn*, 12th Dist. No. CA2007-02-021, 2007-Ohio-6569, ¶ 12, citing *Rowe v. Rowe*, 69 Ohio App.3d 607 (6th Dist.1990), and *AAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). There is no claim that appellant has recently become underemployed, and no evidence to support such a finding. Under the circumstances, the trial court's decision to ignore evidence of appellant's 2012 income was unreasonable and an abuse of discretion. Accordingly, appellant's first and second assignments of error are sustained in part and overruled in part, and the case shall be remanded for the trial court to recalculate appellant's gross income using the three-year average of his income in the years 2010, 2011, and 2012. The trial court shall then re-determine appellant's support obligations based upon such average.

{¶ 23} With respect to the $6,748.40 payment to appellant in 2011, appellant argues that such a payment should be excluded from his gross income because it was a

one-time payment. However, the evidence establishes that Fifth Third made this payment to appellant in order to preemptively settle any cause of action for damages appellant may have had against it for violations of the wage and hour laws. Thus, the payment is in the nature of overtime wages, which should be included in the calculation of appellant's gross income in accordance with R.C. 3119.05(D).

{¶ 24} Defendant's exhibit I establishes that the 2011 lump-sum payment represents overtime wages earned from March 24, through December 31, 2010. Having determined that the trial court did not err when it elected income averaging as the appropriate method for determining appellant's gross income, and having further determined that the relevant three-year period begins in 2010, R.C. 3119.05(D) and (H) require that the $6,748.40 payment be included in the calculation of the three-year average.

{¶ 25} For the foregoing reasons, appellant's first and second assignments of error are sustained in part and overruled in part.

### 2. Appellee's income

{¶ 26} The trial court calculated appellee's yearly gross income at $36,389. Appellant's third and fourth assignments of error challenge the trial court's calculation of appellee's income for purposes of both spousal support and child support. Accordingly, we will consider them together.

{¶ 27} Appellee is employed by Dublin City Schools as a certified paraprofessional/nurse R.N., a position which she has held since 1997. Appellee earns an hourly wage of $20.55, and works 30 hours per week during the 35-week school year. Her employer apportions her pay over a 12-month period so that she receives a bi-weekly pay check throughout the calendar year. Appellee does not work during the summer school break.

{¶ 28} Appellant argues that appellee is underemployed because her potential income is much greater than that which she is currently earning. R.C. 3119.01(C) defines "potential income" as follows:

> (11) "Potential income" means both of the following for a
> parent who the court pursuant to a court support order, or a
> child support enforcement agency pursuant to an

administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:

(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income.

{¶ 29} The evidence in this case shows that appellee achieved a two-year associate degree from Perdue University in 1984, and that she became a registered nurse that same year. After their first child was born in 1994, the parties agreed that appellee would remain at home to raise the children and that appellant would continue working on a full-time basis. In 2007, financial exigencies prompted appellee to return to work, at which time she obtained her employment with the city of Dublin.

{¶ 30} Appellant claims that appellee is underemployed inasmuch as she is qualified to work as a full-time (40 hours) registered nurse at a rate of pay as high as $59,696 per year. Although appellant presented the testimony of vocational expert, Dr. Bruce Growick, Ph.D., in support of his contention that such employment is available to appellee, the trial court gave very little weight to Dr. Growick's testimony. We agree with the trial court's assessment.

{¶ 31} As the trial court noted, Dr. Growick's based his opinion, at least in part, on faulty assumptions regarding appellee's current employment and her level of education. Most significantly, however, Dr. Growick did not believe that appellee suffered from any

physical limitations or medical conditions that could limit her ability to sustain the type of employment for which he believes she is qualified. The trial found that, even if appellee could overcome her 13-year absence from the workforce, her lack of a bachelor's degree in nursing, and her continuing parental responsibilities,[2] appellee's current health issues would present a significant obstacle to such employment. For example, the evidence shows that appellee suffers from a number of serious osteopathic conditions, including a diagnosis of osteoarthritis in her knees, feet, ankles, shoulders, and thumbs. Appellee testified that she has had both knees surgically replaced as well as a shoulder and a thumb. She continues to receive physical therapy two times per week following rotator cuff surgery in July 2012.

{¶ 32} Appellant argues that appellee is not competent to give testimony about her physical condition inasmuch as appellee did not produce corroborating testimony from a medical expert. However, given the nature of appellee's physical limitations, the surgical interventions she has undergone, and the fact that she is herself, a medical practitioner, we find that the trial court was justified in relying upon her testimony. Indeed, the trial court specifically found that appellee's assessment of her employability was "highly credible." (Judgment Entry-Degree of Divorce, 8.) Thus, the evidence supports the trial court's finding that appellee's physical condition prevents her from sustaining the type of full-time employment appellant claims she should have.

{¶ 33} Based upon the foregoing, and in consideration of the factors set forth in R.C. 3119.01(C)(11), we find that the evidence supports the trial court's finding that appellee is not underemployed. Thus, the trial court did not abuse its discretion when it determined appellee's gross income for purposes of calculating appellant's support obligations. Appellant's third and fourth assignments of error are overruled.

{¶ 34} The parties acknowledge that the merit of appellant's fifth, sixth, and seventh assignments of error depend entirely on whether or not the trial court erred in determining the parties' gross income. Having sustained appellant's first and second assignments of error in part, as they pertain to the determination of appellant's gross income, appellant's fifth, sixth, and seventh assignments of error are also sustained in

---

[2] All three of the parties' minor children have been diagnosed with attention deficit hyperactive disorder. The oldest of the three is mildly mentally retarded, and the 12-year old has been hospitalized for depression.

part and overruled in part. For purposes of both child support and spousal support, the trial court shall upon remand, recalculate appellant's yearly gross income using the three-year average of his income in 2010, 2011, and 2012. The trial court shall then re-determine appellant's child support and spousal support obligations based upon such average.

### 3. Tax exemptions

{¶ 35} In appellant's eighth assignment of error, he argues that the trial court erred when it allocated the dependency exemptions for the parties' three minor children. R.C. 3119.82 speaks to this issue in relevant part as follows:

> In cases in which the parties do not agree which parent may claim the children as dependents, *the court shall consider, in making its determination, any net tax savings*, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

(Emphasis added.)

{¶ 36} The trial court allocated the exemptions as follows: "[Appellee] shall claim the minor children in all even-numbered years, and [appellant] shall claim the minor children in all odd-numbered years." (Judgment Entry-Degree of Divorce, 11.) The trial court provided no explanation of this allocation, nor did the trial court engage in a discussion of the factors set forth in R.C. 3119.82. The parties estimated their respective federal income tax rate at 25 to 33 percent for appellant and 10 to 15 percent for appellee. (Tr. 162; 395.) The income figures support this testimony. The parties filed an agreed shared parenting plan and two parent coordinator agreements, both of which were adopted by the trial court. The physical custody of the three minor children is essentially equal under the terms of the plan and the agreements.

{¶ 37} R.C. 3119.82 requires the court to consider the net tax savings to the parties in allocating the dependency exemption. In our opinion, given the evidence in the record, it was incumbent upon the trial court to set forth the basis for its allocation and its failure to do so is an abuse of discretion. *See Lopez v. Lopez*, 10th Dist. No. 04AP-508, 2005-

Ohio-1155, ¶ 53 (trial court abused its discretion when it "failed to include any reasoning process to support its decision to award the federal dependent child exemption to plaintiff"). Accordingly, appellant's eighth assignment of error is sustained.

## V. DISPOSITION

{¶ 38} Based upon the foregoing, appellant's first, second, fifth, sixth, and seventh assignments of error are sustained in part and overruled in part. Appellant's third and fourth assignments of error are overruled, and appellant's eighth assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this decision.

*Judgment affirmed in part*
*and reversed in part;*
*cause remanded.*

KLATT, P.J., and TYACK, J., concur.

———————————