[Cite as *Zeidman v. Zeidman*, 2016-Ohio-4767.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Barry N. Zeidman, | : | |
| Plaintiff-Appellant/ Cross-Appellee, | : | No. 15AP-783 |
| | : | (C.P.C. No. 13DR-1902) |
| v. | : | (REGULAR CALENDAR) |
| Cynthia K. Zeidman, | : | |
| Defendant-Appellee/ Cross-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on June 30, 2016

**On brief:** *Grossman Law Offices, Andrew S. Grossman, Susan M. Suriano,* and *John H. Cousins*, for appellant/cross-appellee. **Argued:** *John H. Cousins*

**On brief:** *Kemp, Schaeffer & Rowe Co., L.P.A.*, and *Julia L. Leveridge*, for appellee/cross-appellant. **Argued:** *Julia L. Leveridge*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant/cross-appellee, Barry N. Zeidman, appeals from a judgment entry-decree of divorce ordering him to pay spousal support to defendant-appellee/cross-appellant, Cynthia K. Zeidman. Cynthia cross-appeals from the same decree of divorce. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Barry and Cynthia were married on September 6, 1981 and have one child who is emancipated. Barry is self-employed and owns a company, Zeidman Production

Management, Inc. ("ZPM"), that produces television commercials. Cynthia spent the bulk of their marriage as a homemaker, but she held brief periods of employment in various fields. During their marriage, the parties maintained a joint Charles Schwab investment account ("the joint Schwab account") and a joint Chase account, and Barry maintained a personal Huntington checking account.

{¶ 3} On May 20, 2013, Barry filed a complaint for divorce. Cynthia filed an answer and counterclaim on July 3, 2013. On December 9, 2013, the magistrate issued temporary orders requiring Barry to pay spousal support to Cynthia in the amount of $3,580 per month and requiring Cynthia to pay the mortgage, taxes, insurance, and household expenses related to the marital residence.

{¶ 4} Subsequently, on March 27, 2014, the parties entered into an agreement related to the sale of the marital residence and the allocation of the expenses of the marital residence. The agreed entry allowed for certain repairs in preparation for the sale of the marital residence and directed that Barry would use insurance proceeds in his possession to pay for the repairs. Additionally, the agreed entry required Barry, beginning May 1, 2014, to pay the mortgage, taxes, insurance, utilities, and repairs associated with the marital residence. The agreed entry also required that the balance of the net sale proceeds from the house would go into an IOLTA account to be held until agreement by the parties or further order of the court. The agreed entry specifically stated Barry "shall not utilize funds from Huntington checking account where the Charles Schwab funds have been deposited for any additional repairs or improvements not addressed" previously in the agreement. (Mar. 27, 2014 Agreed Entry at ¶ 7.)

{¶ 5} The parties then entered into a second agreement on July 24, 2014 relating to the sale of the marital residence and its net proceeds. After the sale of the house, the parties deposited the funds into the IOLTA account. The trial court then granted the parties' joint motion to partially release the restraining order for each party to receive a requested $40,000 from the net proceeds of the sale of the marital residence held in the IOLTA account.

{¶ 6} The matter proceeded to trial on February 11, 2015 on the contested issues of spousal support and division of marital assets. With respect to the evidence of Barry's income, both Barry and Cynthia hired financial experts to testify. Cynthia's expert,

Heather Deskins, testified that she calculated Barry's income by looking at the money that came from ZPM.  If money went from ZPM to Barry personally, Deskins testified she categorized that money either as salary or distribution.  Deskins determined Barry's income to be $195,126.72 in 2012, $147,672.99 in 2013, and $103,522.54 in 2014 for a three-year average of $148,774.08.  Barry's financial expert, Anthony Morettini, testified that Barry's income was $182,992.00 in 2012, $132,763.00 in 2013, and $100,988.00 in 2014.  Based on the numbers presented by Morettini, Barry's three-year average income was $138,914.33.  Morettini explained that he arrived at these numbers by reducing the distributions from ZPM to account for legitimate business expenses.

{¶ 7}  Deskins determined Cynthia's three-year average salary to be $22,000.

{¶ 8}  The contested issue with respect to the division of marital assets was the allocation of approximately $81,000 from the joint Schwab account.  On January 29, 2013, Barry withdrew $81,482 from the joint Schwab account, leaving that account with a balance of $102.  On January 30, 2013, Barry deposited those funds into the joint Chase account.  Then on January 31, 2013, Barry wrote a check from the joint Chase account for the same amount and deposited that check into his personal Huntington checking account.  Barry testified that by the time of trial, only a few thousand dollars of the joint Schwab account funds remained.  Barry admitted he withdrew this money without Cynthia's knowledge.  Barry kept a register of how he used the joint Schwab account funds, saying he used the money to maintain and repair the marital home, cover the expenses necessary to sell the marital residence, and to pay the retainer on Cynthia's attorney.

{¶ 9}  Following trial, the trial court filed the decree of divorce, granting the parties a mutual divorce and resolving the pending issues.  The trial court determined Barry's income for the purposes of its spousal support analysis to be approximately $148,774 per year, the same amount that Cynthia's expert, Deskins, calculated.  The trial court ordered Barry to pay $4,200 per month, plus a 2 percent processing charge, as spousal support to Cynthia for an indefinite period of time.  Additionally, the trial court ordered Barry to reimburse Cynthia the amount of $28,566, which the trial court determined to be one-half of the inadequately accounted for joint Schwab account funds, to be paid from the proceeds of the sale of the marital residence before any further

allocation of the IOLTA funds.  Finally, the trial court ordered each party to pay their own attorney fees and other costs.  The trial court journalized its decision in a July 29, 2015 judgment entry-decree of divorce.  Barry timely appeals, and Cynthia timely cross-appeals.

## II.  Assignments of Error

{¶ 10} Barry assigns the following errors for our review:

> [1.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence in ordering appellant to "reimburse" appellee in the amount of $28,566 for funds used from the Schwab account.

> [2.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence in determining appellant's income for purposes of spousal support.

{¶ 11} Cynthia assigns the following cross-error for our review:

> [1.] The trial court erred and abused its discretion by failing to award attorneys fees to appellee/cross-appellant.

## III.  First Assignment of Error – The Joint Schwab Account

{¶ 12} In his first assignment of error, Barry argues the trial court abused its discretion in ordering Barry to pay Cynthia $28,566 as her one-half share of the improperly accounted for joint Schwab account funds.

{¶ 13} In a divorce proceeding, the domestic court has broad discretion to make divisions of property.  *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1988), citing *Berish v. Berish*, 69 Ohio St.2d 318 (1982).  "In any divorce action, the starting point for a trial court's analysis is an equal division of marital assets."  *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5, citing R.C. 3105.171(C), and *Cherry v. Cherry*, 66 Ohio St.2d 348, 355 (1981).  However, R.C. 3105.171(C)(1) provides that if an equal division would be inequitable, the court must divide the property equitably between the spouses.  A trial court must consider the factors set forth in R.C. 3105.171(F) to ensure an equitable division of marital property.  *Neville* at ¶ 5.  Additionally, a trial court must evaluate all relevant facts in determining an equitable division.  *Cherry* at 355.

{¶ 14} "An appellate court's job is not to reweigh the evidence but to determine whether competent, credible evidence in the record supports the trial court's findings."

*Hood v. Hood*, 10th Dist. No. 10AP-999, 2011-Ohio-3704, ¶ 14, citing *Dunhman v. Dunhman*, 171 Ohio App.3d 147, 2007-Ohio-1167, ¶ 27 (10th Dist.) and *Taub v. Taub*, 10th Dist. No. 08AP-750, 2009-Ohio-2762, ¶ 15. We review a trial court's division of property for an abuse of discretion. *Neville* at ¶ 5; *Hood* at ¶ 14. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} Barry argues the trial court abused its discretion in ordering him to repay Cynthia her one-half share of the joint Schwab account funds because he characterizes it as property that no longer exists, relying on this court's decision in *Hood*. In *Hood*, we stated that "[i]f, at the end of a marriage, 'property then no longer exists, it cannot be divided as marital property or awarded as separate property pursuant to R.C. 3105.171 in a decree of divorce.' " *Hood* at ¶ 22, quoting *Wertz v. Wertz*, 2d Dist. No. 19520, 2003-Ohio-3782, ¶ 17. Barry argues that because the undisputed evidence at trial demonstrated he had already spent the joint Schwab account funds, the trial court could not divide those funds as part of the marital property.

{¶ 16} *Hood* is distinguishable from the case at bar. In *Hood*, the wife voluntarily paid a marital debt with funds from her separate property in the form of approximately $10,000 owed to Lowe's for cabinets installed in the marital residence. Wife then sought to recapture that amount as an award of separate property in the divorce. The trial court determined the funds she used to pay the Lowe's debt were no longer wife's separate property. Wife presented no evidence that the marital residence had any increased value to which wife could trace her separate funds. The marital residence had lost value in excess of $18,000 through the course of the parties' marriage, and the trial court thus concluded the $10,000 of separate property infused into the marital estate. On appeal, this court found no abuse of discretion in the trial court's evenly dividing the $18,000 loss of value between husband and wife and not allowing wife to recapture the approximately $10,000 she paid for the cabinets. *Hood* at ¶ 24.

{¶ 17} Here, neither Barry nor Cynthia is attempting to recapture separate property. Instead, Barry challenges the trial court's division of marital property when it determined Barry improperly accounted for approximately $57,132 of the joint Schwab account funds. As a result of that finding, the trial court ordered Barry to reimburse

Cynthia her one-half portions of the funds. The court did not attempt to divide property which no longer exists, as was at issue in *Hood*. Instead, the trial court calculated the amount in the joint Schwab account, subtracted those legitimate marital expenses for which Barry provided evidence, and then divided the remainder in half to determine Cynthia was entitled to $28,566. To the extent Barry argues the trial court erred in its factual conclusions related to his accounting of the joint Schwab account funds, we note that, even relying on the evidence Barry provided to the court, Barry wrote a number of checks to himself and to multiple third parties without explanation.

{¶ 18} Additionally, Barry argues R.C. 3105.171(E)(4) should not apply because Cynthia did not present evidence that Barry purposely deceived her or committed purposeful wrongdoing in spending the joint Schwab account funds. *See, e.g., Parker v. Parker*, 10th Dist. No. 05AP-1171, 2006-Ohio-4110, ¶ 13 (stating "[t]he financial misconduct statute applies even in situations where one spouse engages in some type of knowing wrongdoing"); R.C. 3105.171(E) (providing that "[i]f a spouse has engaged in financial misconduct, including * * * the dissipation * * * of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property"). However, the trial court did not expressly rely on R.C. 3105.171(E)(4) in determining its equitable division of property.

{¶ 19} The trial court carefully considered the evidence before it and determined Barry had improperly accounted for his use of approximately $57,132 of the joint Schwab account funds. We find competent, credible evidence supports that conclusion. We similarly conclude the trial court did not abuse its discretion in ordering Barry to pay Cynthia her one-half share of those Schwab account funds in the amount of $28,566 as an equitable division of marital property. *See Hamad v. Hamad*, 10th Dist. No. 06AP-516, 2007-Ohio-2239, ¶ 82 (noting "[t]his court has held that dissipation of marital assets is a relevant other factor justifying disproportionate awards of marital property"); *Hood* at ¶ 14 (an equitable division of property need not mean an equal division of property). Thus, we overrule Barry's first assignment of error.

## IV.  Second Assignment of Error – Spousal Support

{¶ 20} In his second assignment of error, Barry argues the trial court abused its discretion in determining Barry's income for purposes of calculating its award of spousal support.

{¶ 21} " '[S]pousal support' means any payment or payments to be made to a spouse or former spouse * * * that is both for sustenance and for support."  R.C. 3105.18(A).  In a divorce proceeding, a trial court may award "reasonable spousal support to either party."  R.C. 3105.18(B).  A trial court has broad discretion to determine the appropriate amount of spousal support based on the particular facts and circumstances of each case.  *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990).  A reviewing court cannot substitute its judgment for that of the trial court absent a showing of an abuse of discretion.  *Id.*

{¶ 22} R.C. 3105.18(C)(1) governs the trial court's discretion and requires the trial court to consider certain factors in determining whether spousal support is reasonable and appropriate.  Similarly, R.C. 3105.18(C)(1) guides the trial court in determining the nature, amount, terms of payment, and duration of any such award of spousal support.  At issue here is R.C. 3105.18(C)(1)(a), which requires the trial court to consider "[t]he income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code."

{¶ 23} At trial, both Barry and Cynthia presented expert testimony regarding Barry's income for the years 2012, 2013, and 2014.  Barry's expert testified he computed Barry's income to be $182,992 in 2012, $132,763 in 2013, and $100,988 in 2014.  The trial court calculated Barry's three-year average income relying on Barry's expert's figures to be $138,914.  By contrast, Cynthia's expert testified she computed Barry's income to be $195,127 in 2012, $147,673 in 2013, and $103,523 in 2014, for a three-year average income of $148,774.  Ultimately, the trial court determined Cynthia's expert's income analysis "is both professionally sound and wholly equitable in ascertaining [Barry's] average annual income for the period 2012-2014."  (July 29, 2015 Decree of Divorce at 16.)  Barry argues the trial court abused its discretion in both deferring to Cynthia's expert's methodology and in using income averaging to determine Barry's income.

{¶ 24} As Barry notes, the trial court found that both expert witnesses provided "competent and reliable testimony." (July 29, 2015 Decree of Divorce at 16.) However, the trial court explained it elected to rely on Cynthia's expert's figures because under Barry's expert's calculations, Barry had a practice of "including unidentified 'missing distributions' into the cost of goods sold," and the trial court found this practice "concerning and certainly susceptible to manipulation." (July 29, 2015 Decree of Divorce at 16.) Specifically, the trial court pointed to Barry's 2012 tax return in which Barry claimed $35,075 under costs of goods sold but then filed an amended return to put that same amount under distributions.

{¶ 25} When presented with competing expert testimony, the trial court is entitled to use its broad discretion in weighing the credibility of the experts and assigning value to their testimony. *Beagle v. Beagle*, 10th Dist. No. 09AP-353, 2009-Ohio-6570, ¶ 18. Though the trial court found both experts to be credible, the trial court explained it would use Cynthia's expert's figures due to discrepancies in Barry's business accounting practices. Having reviewed the entire record, we find no abuse of discretion in the trial court electing to use Cynthia's expert's methodology to calculate Barry's income.

{¶ 26} Barry additionally argues the trial court abused its discretion in using income averaging to determine Barry's income because the spousal support statute does not expressly mention income averaging. However, this court has previously approved the use of "income averaging for purposes of both child support and spousal support." *Poling v. Poling*, 10th Dist. No. 13AP-189, 2013-Ohio-5141, ¶ 15. "[I]ncome averaging is particularly appropriate where income is unpredictable or inconsistent." *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, ¶ 21. Barry's income from his commercial production company has been inconsistent over the course of the three years considered by both Barry's expert and Cynthia's expert in computing his income. Though Barry characterizes the trend in his income as "consistently declining," the fact remains that his income was not consistent during the pendency of the divorce proceedings. (Barry's Brief at 25.) Further, the trial court considered all 14 factors found in R.C. 3105.18(C)(1) in determining the amount and duration of the spousal support award. We find no abuse of discretion in the trial court's use of income averaging to determine the appropriate and reasonable award of spousal support.

{¶ 27} In sum, the trial court did not abuse its discretion in calculating Barry's income for purposes of awarding spousal support to Cynthia. Accordingly, we overrule Barry's second and final assignment of error.

## V. Cross-Assignment of Error – Attorney Fees

{¶ 28} In her sole cross-assignment of error, Cynthia argues the trial court abused its discretion in failing to award her attorney fees.

{¶ 29} Ohio adheres to the "American rule" in regard to the recovery of attorney fees: "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7. An exception to this general rule is that attorney fees may be awarded to a prevailing party when a statute specifically authorizes it. *Id.* In an action for divorce, R.C. 3105.73(A) permits a trial court to award "all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether an award under R.C. 3105.73(A) is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factor the court deems appropriate." Thus, a court decides "on a case-by-case basis whether an award of attorney fees would be equitable." *Scinto v. Scinto*, 10th Dist. No. 09AP-5, 2010-Ohio-1377, ¶ 22, citing *Ockunzzi v. Ockunzzi*, 8th Dist. No. 86785, 2006-Ohio-5741, ¶ 70. An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and the appellate court will not reverse on appeal absent an abuse of discretion. *Settele v. Settele*, 10th Dist. No. 14AP-818, 2015-Ohio-3746, ¶ 51.

{¶ 30} Cynthia argues the trial court abused its discretion in failing to award her attorney fees because the parties' incomes are vastly disparate. However, as the trial court expressly noted, Cynthia will be receiving $4,200 per month in spousal support and "was awarded sizable liquid assets." (July 29, 2015 Decree of Divorce at 23.) A disparity in income does not require the trial court to award Cynthia her requested attorney fees, especially when Cynthia has assets available to her from which to pay her fees. *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 106-07, citing *Meeks v. Meeks*, 10th Dist. No. 05AP-315, 2006-Ohio-642, ¶ 26 (the trial court did not abuse its discretion in refusing to award the wife her attorney fees where the wife's "income and her

awarded marital assets would enable her to pay her attorney fees"). *See also Dach v. Homewood*, 10th Dist. No. 14AP-502, 2015-Ohio-4191, ¶ 52-53 (rejecting the wife's argument that trial court abused its discretion in denying her an award of attorney fees because there is large income disparity between the parties).

{¶ 31} The trial court considered the appropriate factors under R.C. 3105.73(A) and was in the best position to observe the conduct of the parties throughout the course of the divorce proceedings. Ultimately, the trial court noted that although both parties raised complaints about the conduct of the other, the trial court did not observe any serious behavior on behalf of either party to substantially or intentionally frustrate the proceedings. Having reviewed the entire record, we find no abuse of discretion in the trial court's determination that each party shall pay its own attorney fees and costs. Thus, we overrule Cynthia's sole cross-assignment of error.

## VI. Disposition

{¶ 32} Based on the foregoing reasons, the trial court did not abuse its discretion in its distribution of marital property, in its award of spousal support, or in its determination that both parties shall pay their own attorney fees. Having overruled Barry's two assignments of error and Cynthia's sole cross-assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

DORRIAN, P.J., and SADLER, J., concur.

———————————