[Cite as *Lorey v. Lorey*, 2016-Ohio-5949.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Amanda N. Lorey, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-14 |
| v. | : | (C.P.C. No. 15DR-1024) |
| Michael S. Lorey, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 22, 2016

**On brief:** *Isaac Wiles Burkholder & Teetor, LLC, Dale D. Cook*, and *Joanne S. Beasy*, for appellee.

**On brief:** *Richard B. Parry*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Michael S. Lorey, appeals the December 10, 2015 judgment entry and decree of divorce entered by the Franklin County Common Pleas Court, Division of Domestic Relations. For the following reasons, we affirm the judgment of the trial court.

I. Facts and Procedural History

{¶ 2} Appellant and plaintiff-appellee, Amanda N. Lorey, were married on July 2, 2011, and a single child was born as issue of their marriage. On March 17, 2015, appellee filed a complaint for divorce in the trial court. On the same day, appellee filed a motion for temporary orders with regard to residential parenting rights, child support, and payment of debts. On April 28, 2015, the trial court's magistrate entered an agreed partial

temporary order requiring the parties to submit additional evidence and affidavits by May 12, 2015.

{¶ 3} Following the parties' submission of affidavits, on May 22, 2015, the magistrate filed an amended temporary order. In part, the amended temporary order provided:

> **Allocation of debts and obligations:**
>
> **Plaintiff** shall pay and hold the defendant harmless on the following debts and obligations:
>
> a. Her household living expenses.
>
> b. Lease payment or monthly car payment, insurance, maintenance and licensing for all vehicle(s) in her possession.
>
> c. The minimum monthly payment of any and all debts in her individual name, except the First Merit Loan for the repossessed car ($150.00 monthly).
>
> **Defendant** shall pay and hold the plaintiff harmless on the following debts and obligations:
>
> a. His household living expenses.
>
> b. Lease payment or monthly car payment, insurance, maintenance and licensing for all vehicle(s) in his possession.
>
> c. The minimum monthly payment on any and all debts in his individual name, plus the First Merit Loan for the repossessed car ($150.00 monthly).

(Emphasis sic.) (May 22, 2015 Order at 2.)

{¶ 4} On June 9, 2015, having sought and received leave to file, appellant filed an answer to the complaint. On June 10, 2015, appellant filed a motion for an oral hearing, pursuant to Civ.R. 75(N), to modify the May 22, 2015 temporary order. On June 30, 2015, the magistrate held an oral hearing on appellant's motion to modify the temporary order. On July 28, 2015, the magistrate filed an order denying appellant's motion to modify the temporary order.

{¶ 5} On August 4, 2015, appellee filed a motion for contempt, alleging that appellant failed to comply with the May 22, 2015 temporary order. Specifically, appellee

alleged that appellant failed to pay debt relating to the repossessed vehicle ("the vehicle") that was subject to the First Merit loan as required by the order. On the same day, appellee filed a motion to compel discovery and for attorney fees. On August 25, 2015, appellant filed an amended answer.

{¶ 6} On December 10, 2015, appellee dismissed her August 4, 2015 motion to compel discovery and motion for contempt. On the same day, the trial court held a final hearing; following the hearing, the trial court filed a judgment entry and decree of divorce. In the decree, the court stated:

> Husband previously owned a 2006 Ford truck that is subject to a loan from First Merit Bank and is in Wife's name. The balance owed on the loan as of October 22, 2015 was $8,883.15 and the lender is accepting $150.00 monthly payments on the debt, which payments Wife has solely incurred because Husband has refused and failed to pay the same. Husband has even failed to make payments after being court ordered to do so as part of the temporary orders that issued in this case on May 22, 2015.
>
> Because of Husband's financial misconduct with respect to the 2006 Ford truck, Husband shall be solely responsible for the outstanding debt owed on this truck and shall hold Wife harmless on the same. Husband shall make the monthly payments on the same until all loan payments, fees and expenses related to the 2006 Ford Truck are satisfied. Husband shall deliver the $150.00 monthly payments to Wife on or before the 15th of each month to ensure that Wife may timely make the monthly truck payment that is due on the 25th of each month.
>
> If the Husband fails to comply with the provisions herein and is found in contempt, he shall pay Wife's reasonable and necessary attorney fees incurred to enforce the provisions of this paragraph through contempt or otherwise. Payment of this debt and any of Wife's attorney fees to enforce the provisions herein are "domestic support obligations" and are not dischargeable in bankruptcy.

(Dec. 10, 2015 Decree at 8-9.)

{¶ 7}   The decree further provided that "[t]he Temporary Orders issued April 28, 2015 shall not merge with this Decree.  Any outstanding arrearage or overpayment shall remain due and owing." (Dec. 10, 2015 Decree at 10.)

## II.  Assignments of Error

{¶ 8}   Appellant appeals and assigns the following two assignments of error for our review:

> [I.] THE TRIAL COURT'S DECISION THAT HUSBAND COMMITTED FINANCIAL MISCONDUCT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE RECORD DEMONSTRATES THAT WIFE DID NOT PROVIDE ANY EVIDENCE THAT HUSBAND INTENDED TO WRONGFULLY DEPRIVE HER OF MARITAL ASSETS.
>
> [II.] THE TRIAL COURT ERRED IN FINDING THAT THE INDEBTEDNESS FOR THE TRUCK PAYMENT WAS A DOMESTIC SUPPORT OBLIGATION, AND THEREFORE NOT DI[S]CHARGEABLE IN BANKRUPTCY.

## III.  Discussion

### A.  First Assignment of Error

{¶ 9}   In his first assignment of error, appellant asserts the trial court's finding that he committed financial misconduct is against the manifest weight of the evidence.

{¶ 10} A trial court has broad discretion to make divisions of property in a divorce action.  *Zeidman v. Zeidman*, 10th Dist. No. 15AP-783, 2016-Ohio-4767, ¶ 13, citing *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1988), citing *Berish v. Berish*, 69 Ohio St.2d 318 (1982); *Hadinger v. Hadinger*, 10th Dist. No. 15AP-09, 2016-Ohio-821, ¶ 14.  " 'In any divorce action, the starting point for a trial court's analysis is an equal division of marital assets.' "  *Zeidman* at ¶ 13, quoting *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5, citing R.C. 3105.171(C), and *Cherry v. Cherry*, 66 Ohio St.2d 348, 355 (1981).  "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * *  [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section."  R.C. 3105.171(B).

{¶ 11} If an equal award would be inequitable, a trial court must divide the property in an equitable fashion.  *Zeidman* at ¶ 13.  R.C. 3105.171(C)(1) provides:

Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.

{¶ 12} R.C. 3105.171(F) sets forth a non-exhaustive list of factors that the trial court must consider in determining the division of marital property:

In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

*See also Neville* at ¶ 5; *Cherry* at 355 (finding that a trial court must evaluate all relevant facts in determining an equitable division). Although a trial court is required to consider all factors expressed in R.C. 3105.171(F), it is not required to provide an exhaustive explanation of its analysis. *Hadinger* at ¶ 21, citing *Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 21. Instead, the court must clearly indicate that it considered the statutory factors. *Id.*, citing *Casper v. DeFrancisco*, 10th Dist. No. 01AP-604, 2002-Ohio-623.

{¶ 13} A court may find an equal division of marital property to be inequitable if one spouse demonstrates that the other has committed financial misconduct. "Financial misconduct occurs when one spouse engages in some type of knowing wrongdoing, by which the spouse either profits or intentionally interferes with the other spouse's property rights." *Best v. Best*, 10th Dist. No. 11AP-239, 2011-Ohio-6668, ¶ 17, citing *Taub v. Taub*, 10th Dist. No. 08AP-750, 2009-Ohio-2762, ¶ 33. "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4). This court has affirmed a trial court's decision finding that a spouse committed financial misconduct where "a spouse has violated the court's restraining orders; dissipated marital assets without the knowledge or permission of the other spouse; stole equipment, inventory, and records of the other spouse's business so as to interfere with the business' continued operation; cashed an insurance check and used the proceeds for the spouse's own purposes; and sold stock owned by the other spouse, without that spouse's knowledge or permission." *Id.* at ¶ 17, citing *Hamad v. Hamad*, 10th Dist. No. 06AP-516, 2007-Ohio-2239, ¶ 62. "The burden of proving financial misconduct is on the complaining spouse." *Hamad* at ¶ 61.

{¶ 14} We review a domestic court's division of marital property in a divorce action under an abuse of discretion standard. *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 38, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95 (1988); *Hadinger* at ¶ 14, citing *Colley v. Colley*, 10th Dist. No. 09AP-333, 2009-Ohio-6776, ¶ 17. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.)

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An appellate court will not reverse a trial court's determination regarding financial misconduct unless it is against the manifest weight of the evidence. *Best* at ¶ 18. A decision is not against the manifest weight of the evidence where some competent, credible evidence supports the trial court's findings. *Taub* at ¶ 15, citing *Pearson v. Pearson*, 10th Dist. No. 96APF08-1100 (May 20, 1997), citing *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

{¶ 15} Here, the trial court found that appellant committed financial misconduct with regard to the vehicle that was subject to the May 22, 2015 temporary order. At the final hearing on December 10, 2015, appellee testified that she purchased the vehicle during the marriage in order for appellant to have transportation to work. She stated appellant agreed to make payments on the vehicle. After appellant's employment was terminated, the vehicle was repossessed for failure to make payments. Approximately two weeks after the parties separated in August 2014, appellant purchased another vehicle for himself. Furthermore, appellee testified that appellant had not made any payments on the vehicle as required by the May 22, 2015 temporary order. Appellee provided documentation demonstrating that she had been making payments from June until November 2015.

{¶ 16} Appellant contends the trial court erred in finding that he committed financial misconduct because the record does not support a finding that he engaged in "some type of wrongdoing (i.e. wrongful scienter)." (Appellant's Brief at 13.) In the divorce decree, the trial court stated that appellee has "solely incurred" the payments on the vehicle "because [appellant] has refused and failed to pay the same." (Decree at 8.) Furthermore, the trial court stated that "[appellant] has even failed to make payments after being court ordered to do so as part of the temporary orders that issued in this case on May 22, 2015." (Decree at 8.)

{¶ 17} We find that competent, credible evidence supports the trial court's finding of financial misconduct. The record contains unrebutted testimony that appellant was responsible for making payments on the vehicle and failed to make such payments, leading to the vehicle's repossession. After the vehicle was repossessed, appellant never made payments on the debt on the vehicle, even after being ordered to do so in the May 22, 2015 temporary order. As a result of appellant's failure to comply with the court

order, appellee made the payments herself. Thus, by failing to make payments on the vehicle in compliance with the temporary order, appellant committed wrongdoing and profited at appellee's expense. *Taub* at ¶ 34 (finding that party committed wrongdoing by violating restraining order thereby justifying a finding of financial misconduct). Based on the competent, credible evidence in the record, we conclude that the trial court's finding of financial misconduct was not against the manifest weight of the evidence.

{¶ 18} Accordingly, we overrule appellant's first assignment of error.

**B.  Second Assignment of Error**

{¶ 19} In his second assignment of error, appellant asserts the trial court erred by finding that appellant's payments on the vehicle to appellee and any attorney fees incurred to enforce such payments were a domestic support obligation, and therefore not able to be discharged in bankruptcy.

{¶ 20} Pursuant to 11 U.S.C. 523(a)(5), a bankruptcy proceeding "does not discharge an individual debtor from any debt * * * for a domestic support obligation." *See In re Thomas*, 8th Dist. No. 86375, 2006-Ohio-3324, ¶ 6; *In re Smith*, 586 F.3d 69, 73 (1st Cir.2009) ("The term 'domestic support obligation' * * * is a newly defined term in the Bankruptcy Code, as updated by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA')."). A domestic support obligation is defined as:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law * * * that is--
>
> (A)  owed to or recoverable by--
>
> (i)  a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B)  in the nature of alimony, maintenance, or support * * * of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C)  established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or
>
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. 101(14A).

{¶ 21} "While many types of debts are dischargeable, a debt arising to a spouse, former spouse, or child of the debtor for support of such spouse or child in connection with an order of a court of record, is not dischargeable in bankruptcy." *Kassicieh v. Mascotti*, 10th Dist. No. 05AP-684, 2007-Ohio-5079, ¶ 22, citing 11 U.S.C. 523(a)(5). "Whether a debt is nondischargeable as being in the nature of alimony, maintenance or support * * * is a matter of Federal, not State, law." *Barnett v. Barnett*, 9 Ohio St.3d 47, 49 (1984). " 'In ruling on the dischargeability of a debt the bankruptcy court is not bound by state law. The bankruptcy court does not sit as another state court as in diversity cases. Rather, it sits as a federal court applying federal law.' " *Id.* at 52-53, quoting Case Comment, 50 American Bankruptcy L.J. 175, 176-77 (1976).

{¶ 22} "Federal and state courts have concurrent jurisdiction to determine whether debts are nondischargeable under section 523(a)(5)." *Barnett* at 49. *See Bethel v. Bethel*, 10th Dist. No. 10AP-989, 2011-Ohio-2747, ¶ 9 (finding that state courts have concurrent jurisdiction with bankruptcy courts "when there is a dispute as to whether a particular debt obligation is in nature of alimony, maintenance or support"). " '[W]hen dischargeability of a marital debt is *not raised in bankruptcy court*, then it is an issue which may be ruled on by a court with concurrent jurisdiction *after* the discharge in bankruptcy.' " (Emphasis added.) *Kassicieh* at ¶ 23, quoting *Loveday v. Loveday*, 7th Dist. No. 02 BA 13, 2003-Ohio-1431, ¶ 18, citing *In re Ball*, 181 B.R. 384 (E.D.Ark.1995). "The label used in the divorce decree or the parties' agreement does not control whether the obligation is a domestic support obligation under bankruptcy law." *In re Westerfield*,

403 B.R. 545, 551 (Bankr.E.D.Tenn.2009), citing *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). *See Barnett* at 52 ("In order for a bankruptcy court to properly carry out its functions, it must have the ability to determine claims that are dischargeable."); *In re McLain*, 533 B.R. 735, 741 (Bankr.C.D.Ill.2015), citing *In re Trentadue*, 527 B.R. 328, 333 (Bankr.E.D.Wis.2015).

{¶ 23} "Courts of common pleas and divisions thereof have original jurisdiction over all justiciable matters." *State ex rel. Keller v. Columbus*, 164 Ohio App.3d 648, 2005-Ohio-6500, ¶ 19 (10th Dist.), citing *Eagle Fireworks, Inc. v. Ohio Dept. of Commerce*, 4th Dist. No. 03CA28, 2004-Ohio-509, ¶ 8, citing Article IV, Section 4(B), Ohio Constitution. In order for a cause to be justiciable, it must present a real controversy with issues that are ripe for judicial resolution and will have a direct and immediate impact on the parties. *Keller* at ¶ 19, citing *Eagle* at ¶ 8, citing *State v. Stambaugh*, 34 Ohio St.3d 34, 38 (1987). "The doctrine of ripeness arises from principles of judicial economy and the desire to prevent courts ' "from entangling themselves in abstract disagreements." ' " *Baker v. Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-987, 2012-Ohio-1921, ¶ 10, quoting *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89 (1998), quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967).

{¶ 24} In order to determine whether an issue is ripe for review, a court must weigh: "(1) the likelihood that the alleged future harm will occur; (2) the likelihood that delayed review will cause hardship to the parties; and (3) whether the factual record is sufficiently developed to provide fair resolution." *Keller* at ¶ 20, citing *Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726 (1998). Generally, a claim that rests on future events that may not occur at all, or may not occur as anticipated, is not considered ripe for review. *Id.*, citing *Eagle* at ¶ 9, citing *Texas v. United States*, 523 U.S. 296 (1998).

{¶ 25} Here, the question of whether or not appellant's debt payments are dischargeable in bankruptcy is not ripe for our review. Appellant does not assert that he has entered bankruptcy proceedings or that such debt was discharged in a prior bankruptcy proceeding. *See Bethel* at ¶ 11, 14 (finding that this court possessed jurisdiction to determine whether obligation was in the nature of alimony, maintenance, or support where bankruptcy court did not make any specific ruling on the same or indicate that it considered the matter). Rather, appellant asks this court to opine

regarding whether, in the event of a future bankruptcy proceeding, the debt at issue would be dischargeable. Thus, appellant asks this court to resolve a claim that rests on future events that may not occur at all, or may not occur as anticipated. Therefore, we conclude that appellant's claim is not ripe for review, and we decline to consider whether the debt payments at issue would be dischargeable in a future bankruptcy proceeding. *See In re Moncur*, 328 B.R. 183, 187 (Bankr.9th Cir.2005) ("The doctrines regarding ripeness and advisory opinions underlie the reasoning of decisions holding that no court, not even a bankruptcy court, can adjudicate the dischargeability of a debt of a person who is not yet a debtor in a bankruptcy case."); *In re Maddigan*, 312 F.3d 589, 595 (2d Cir.2002) ("[F]amily court judges cannot reasonably be expected to anticipate future bankruptcy among the parties to a custody proceeding."); *In re Menk*, 241 B.R. 896, 905 (Bankr.9th Cir.1999) ("For a nondischargeability proceeding 'arising under title 11' to be ripe and to present an actual controversy, the defendant self-evidently must be a 'debtor,' which status requires a bankruptcy case, and must either have a discharge in prospect or have already received a discharge"); *Kassicieh* at ¶ 23. *But see Wilson v. Wilson*, 9th Dist. No. 05CA0078, 2008-Ohio-3195, ¶ 20.

{¶ 26} Accordingly, appellant's second assignment of error is not ripe for review and we decline to address it.

## IV. Conclusion

{¶ 27} For the foregoing reasons, we overrule appellant's first assignments of error and we decline to address appellant's second assignment of error as unripe. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

BRUNNER and HORTON, JJ., concur.